UNITED KINGDOM, requesting the assistance of the United States Government in securing documentary evidence in the case of Regina V. Olumbummi Wood, et. al., Frank Martin, Oladele Raji, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 00-11114.

United States Court of Appeals,

Eleventh Circuit.

Jan. 19, 2001.

Appeals from the United States District Court for the Southern District of Florida. (No. 99-01562-CV-DTKH), Daniel T.K. Hurley, Judge.

Before MARCUS, WILSON and MAGILL[*], Circuit Judges.

MARCUS, Circuit Judge:

Appellants Oladele Raji and Frank Martins appeal the district court's order declining to compel the disclosure of certain sensitive law enforcement documents possessed by the United States, including grand jury materials, work product, and wiretap information, all of which Appellants contend are relevant to their defense of a criminal prosecution in England. The United States agreed to produce certain records related to Appellants' prosecution, but refused to produce others. The district court found that the undisclosed documents are privileged or protected by statute, and that Appellants had failed to demonstrate a compelling need for them. Because the district court did not abuse its discretion in declining to order further disclosure of these documents, we affirm.

I.

The background to this appeal is relatively straightforward. Appellants are currently awaiting trial in England on criminal charges related to an alleged credit card fraud scheme.[1] The indictment in that case alleges that Appellants participated in a conspiracy whose members used, in the United Kingdom, American Express credit card numbers that they had obtained from American co-conspirators. The American co-conspirators were tried in a separate proceeding before a federal district court in the Southern District of

_____

[*]Honorable Frank J. Magill, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]This Court has been advised that Appellants' trial is scheduled to begin in February 2001.

Florida following an investigation by the United States government (the "*Ojomo* prosecution").[2]

In January 1999, Appellants and a third defendant in the English proceeding, Olumbummi Woods, applied to Judge Elwen of the Crown Court—the judge presiding over the criminal trial—for the issuance of a letter rogatory seeking the disclosure of various materials related to the *Ojomo* prosecution. Judge Elwen granted the request, and accordingly issued two letters rogatory on behalf of the Appellants, dated February 8, 1999, and February 26, 1999, respectively. The letters asked the United States District Court for the Southern District of Florida to assist the three English criminal defendants by ordering agents of the United States government ("Government") and American Express to produce various materials gathered during and generated by the investigation giving rise to the *Ojomo* prosecution.

Appellants then moved in the Southern District of Florida for discovery and inspection of the materials identified in the letters rogatory. In response, the Government agreed to produce voluntarily some of the requested materials, including grand jury and wiretap information. On July 20, 1999, the district court memorialized these voluntary disclosures in an order which lifted secrecy protections applicable to the wiretap and grand jury materials and thereby permitted the Government to disclose them. In addition, the district court authorized Appellants to take the deposition of Joan Ojomo, in connection with which the Government gave the British Crown Prosecution Service ("CPS") access to additional materials from the *Ojomo* investigation.

Meanwhile, on or about August 23, 1999, the CPS, apparently pursuant to its discovery obligations under English law, served Appellants with a disclosure schedule prepared by the CPS and a British police constable after a visit to the offices of the U.S. Secret Service in Miami.[3] That schedule inventoried several hundred files and boxes of unused investigative materials related to the *Ojomo* prosecution still in the possession of the United States. The listed materials are generally of three types: grand jury materials, work product (including written summaries and memoranda) of the local U.S. Attorney's Office and the Secret Service, and records of intercepted conversations obtained during the *Ojomo* investigation. It is these materials, not the items covered by the earlier requests, which are the subject of this appeal.

---

[2]According to the Government, that investigation is not complete, because two fugitives (one of whom is fighting extradition from the United Kingdom) have yet to be tried.

[3]It is unclear to what extent British law enforcement "stud[ied] in depth" these items (as Appellants claim) rather than examining them solely for the purpose of cataloguing them. This Court is not aware of any evidence that the Government disclosed the contents of these items to British law enforcement; indeed, the Government asserts that most if not all of these items have never been disclosed publicly.

Upon receipt of the CPS schedule, Appellants asked the district court to permit additional discovery. In an order dated October 4, 1999, the district court explained that it stood "ready to respond to any request issued by its sister court in Britain," but would only consider granting relief if Judge Elwen first issued such a request after determining that "the interests of justice would be served by additional discovery in the United States."

Appellants then moved in the English court for additional discovery. Judge Elwen determined that the very fact that the items were listed on the CPS's disclosure schedule meant that these items satisfied the threshold test of "relevance or possible relevance" and therefore were discoverable under English law. Accordingly, on October 8, 1999, Judge Elwen ruled that Appellants were entitled to discovery of the items. In so doing, however, Judge Elwen emphasized that this ruling was "*subject to any claim as to privilege, immunity, or otherwise as may be asserted by those with possession of the documents and upheld by the appropriate American judicial authority* " (emphasis added).

Citing this ruling and the February 1999 letters rogatory, Appellants, on October 19, 1999, filed a second motion with the district court, seeking an order compelling disclosure of the items. The district court referred the matter to a United States Magistrate Judge. The magistrate judge conducted a three-hour hearing on the matter, during which the magistrate judge and the parties considered in detail each of the several hundred items on the disclosure schedule. The Government agreed to disclose voluntarily certain of the requested materials, including wiretap applications, supporting affidavits, court orders authorizing wiretaps, and Secret Service interviews of persons arrested in the *Ojomo* prosecution. The Government did not, however, agree to produce all of the requested items. The Assistant United States Attorney responsible for the matter repeated an earlier representation that the Government's investigation and the requested materials did not relate to, mention, or incriminate the Appellants.

On October 29, 1999, the magistrate judge issued a Report and Recommendation. In her report the magistrate judge ordered American Express to disclose certain account information relating to the *Ojomo* investigation, excluding work product and personal customer or proprietary information, and also recommended that the district court approve the Government's voluntary disclosures. Otherwise, however, the magistrate judge recommended against disclosure of the items on the disclosure schedule. She concluded that the grand jury and work product materials were privileged, implicitly finding as well that Appellants had not shown a sufficient basis to overcome the privilege. As for the records of intercepted conversations, she

concluded that the federal wiretap statute, 18 U.S.C. § 2510, *et seq.,* barred their disclosure, and that moreover Appellants had not shown a compelling need for them.

Appellants filed a timely objection to the Report and Recommendation. On November 18, 1999, the district court affirmed the report and adopted its recommendations. The district court issued an amended order to the same effect on December 3, 1999, after considering Appellants' objections a second time. This appeal followed.

II.

As an initial matter, it is essential to clarify the laws or treaties by which Appellants may assert their entitlement to the materials in dispute. Appellants identify three sources for their entitlement to these materials: 28 U.S.C. § 1782; the Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, S. Treaty Doc. No. 104-2 ("MLAT"); and the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters. The United States agrees that § 1782 provides authority for the potential disclosure of the materials.[4] It disputes, however, that the MLAT and the Hague Convention are implicated by this case. We agree.

The MLAT in relevant part authorizes United States courts to give effect to certain requests made by the United Kingdom for information relevant to criminal investigations or prosecutions. *See* MLAT, art. 5, ¶ 1. The MLAT with the United Kingdom is one of a series of modern mutual legal assistance treaties negotiated by the United States in order to counter criminal activities more effectively. The MLAT provides for a broad range of cooperation in criminal matters, including (1) the taking of testimony or statements of witnesses; (2) the provision of documents, records, and evidence; (3) the service of legal documents; (4) the location or identification of persons; (5) the execution of requests for searches and seizures; and (6) the provision of assistance in proceedings relating to the forfeiture of the proceeds of crime and the collection of fines imposed as a sentence in a criminal prosecution. *See* Letter of Transmittal from the President of the United States to the Senate, Jan. 23, 1995. The MLAT is a self-executing treaty, and was in effect at the time this proceeding commenced.

A key feature of the MLAT is the requirement that a request for assistance be made, not directly to the courts, but rather between the "Central Authorities," which the treaty defines as the Secretary of State of

---

[4]Section 1782 is discussed below.

the Home Department (for the United Kingdom), and the Attorney General (for the United States), or their designees. MLAT, art. 2, ¶ 2. There is no provision for private parties, such as individual criminal defendants in the English (or American) courts, to request the production of information. *See* MLAT, art. 1, ¶ 3 ("The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence...."). Moreover, the request itself must comply with various requirements. Specifically, it must include (a) the name of the authority conducting the proceedings to which the request relates; (b) the subject matter and nature of the proceedings for the purposes of which the request is made; (c) a summary of the information giving rise to the request; (d) a description of the evidence or information or other assistance sought; and (e) the purpose for which the evidence or information or other assistance is sought. *Id.,* art. 4, ¶ 2; *see also* art. 4, ¶ 3 (listing additional items to be included "[t]o the extent necessary and possible").

We need not consider Appellants' arguments under the MLAT, because no valid MLAT request was ever made for the specific materials at issue in this appeal.[5] Appellants refer to a document sent by the CPS to the district court on or about October 21, 1999, entitled "Response by Crown Prosecution Service to the Defense Application for Disclosure of Unused Material in the United States of America," and suggest that it constituted a MLAT request. That document, however, did not conform to the requirements of the MLAT, and thus cannot be viewed as a proper MLAT request. The document was not transmitted between Central Authorities or their designees, but rather was sent by the CPS directly to the district court. Appellants suggest that the October letter should be viewed as a supplement to the prior requests, which they contend were transmitted in conformity with the MLAT. But there is simply no dispute that the original communications did not discuss, let alone request, the specific material referenced by the October letter; the material underlying the October letter was far more expansive and entirely different in scope. The letter cannot be viewed as a valid MLAT request solely because a proper MLAT request had been made earlier for other

---

[5]We note, however, that compliance with an MLAT request is not mandatory with respect to records held by governmental agencies. *See* MLAT, art. 9, ¶ 2 ("The Requested Party may provide a copy of any record or information in the possession of a government department or agency but not publicly available to the same extent and on the same conditions as to its own law enforcement or judicial authorities. The Requested Party may refuse a request pursuant to this paragraph entirely or in part."). Thus, even if the October letter were a valid MLAT request, it would not automatically follow that Appellants are entitled to the documents they seek in this appeal.

records relating generally to the same subject matter.[6]

Appellants' alternative suggestion that the Hague Convention provides a source for the disclosure of this information fares no better. The Convention permits signatory nations (such as the United States and the United Kingdom) to respond to a request from another signatory for evidence related to civil and commercial matters. *See* 28 U.S.C. § 1781 note; *see also id.,* art. 1 ("In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act."). The Convention plainly does not apply to this proceeding. The materials at issue here are sought for use in a criminal proceeding; the Convention, by contrast, by its terms applies only to civil and commercial matters. *See In re Letter of Request from the Amtsgericht Ingolstadt, Federal Republic of Germany,* 82 F.3d 590, 593 (4th Cir.1996) ("[T]he Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, as its title verifies, applies only to civil and commercial cases[.]").

Appellants contend that because this request involves "discovery" it should be deemed a civil matter. But that argument, in addition to being wholly unsupported, would contradict the plain meaning of the text of the Convention by making the Convention potentially applicable in all disputes, not merely civil or commercial cases. Appellants also contend that because the underlying criminal case involves commercial transactions, the Convention should be triggered. But that argument suffers from the very same defects: it is unsupported, and would rewrite the text of the Convention. In any event, even if we were to hold that the Convention could be applied in connection with a criminal proceeding, the CPS's October letter plainly did not comply with the Convention's requirements for a letter of request. *See* U.S.C. § 1781 note, art. 3.[7]

In short, it is § 1782, and § 1782 alone, that provides a potential basis for disclosing to Appellants the information now at issue.

---

[6]Moreover, the document did not specifically request any disclosure; although it stated the CPS's "hope[ ] that all unused material in the United States relevant to the defense is disclosed to them," the CPS's position was ultimately "one of neutrality" regarding production of the items in question. Appellants do not dispute this fact, but insist that Government counsel described the letter as a "request" during the hearing before the magistrate judge, and that the magistrate in turn accepted this description. The Government counters that it never described the letter as a proper MLAT request.

[7]Among other requirements, the Convention specifies that a letter of request must contain "(a) the authority requesting its execution and the authority requested to execute it, if known to the requesting authority; (b) the names and addresses of the parties to the proceedings and their representatives, if any; (c) the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto; (d) the evidence to be obtained or other judicial act to be performed." 28 U.S.C. § 1781 note, art. 3.

III.

Under 28 U.S.C. § 1782, district courts have the power to provide assistance to foreign courts by responding to letters rogatory and other requests from interested parties such as Appellants here. The statute provides in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The last sentence of the statute contains an important caveat, by explaining that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." *Id.*

Whether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court. *See, e.g., Lo Ka Chun v. Lo To,* 858 F.2d 1564, 1565-66 (11th Cir.1988); *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151, 1154 (11th Cir.1988); S. Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted at* 1964 U.S.C.C.A.N. 3782, 3788 (explaining that section 1782 "leaves the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable"). Two important points flow from this fact. First, a district court's compliance with a § 1782 request is not mandatory; contrary to Appellants' repeated suggestions, the district court was not obliged to grant their application simply by virtue of the English court's order or for any other reason. Second, our review of the district court's decision in this case is extremely limited and highly deferential. Because "Congress has given the district courts such broad discretion in granting judicial assistance to foreign countries, this court may overturn the district court's decision only for abuse of discretion." *Lo Ka Chun,* 858 F.2d at 1565-66; *accord, Trinidad and Tobago,* 848 F.2d at 1154.[8] This deferential standard is identical to

___

[8]Of course, to the extent the district court's decision is based on an interpretation of law, our review is de novo. *See, e.g., SunAmerica Corp. v. Sun Life Assur. Co.,* 77 F.3d 1325, 1333 (11th Cir.1996) (holding that the district court necessarily abuses its discretion if it "has applied an incorrect legal standard").

that used in reviewing the district court's ordinary discovery rulings, such as rulings as to whether the foundation for a claim of privilege has been established. *See Harris v. Chapman,* 97 F.3d 499, 506 (11th Cir.1996) ("District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential."); *Cox v. Administrator United States Steel & Carnegie,* 17 F.3d 1386, 1413 (11th Cir.1994) ("Discovery orders should not be overturned 'unless the district court has abused its discretion and such abuse has resulted in substantial harm to the party seeking relief.' ") (citation omitted); *see also Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1101 n. 6 (2d Cir.1995) (stressing that "if the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation").

Appellants contend that the district court abused its discretion in declining to order production of items that the Government refused to produce voluntarily. Appellants challenge particular aspects of the district court's reasoning with respect to the grand jury, work product, and wiretap materials in question. More broadly, they contend that the magistrate judge (whose report was adopted by the district court) ignored Judge Elwen's finding regarding the relevance of these materials to the defense of the English prosecution.

Turning first to the broadest objection, we find no reversible error in the magistrate's approach to the issue of relevance. In deciding whether to respond to a request under § 1782, "the district court must decide whether the evidence would be discoverable in the foreign country before granting assistance." *Trinidad and Tobago,* 848 F.2d at 1156; *see also Euromepa,* 51 F.3d at 1100 (noting that "inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"). Here, the English court determined that, as a matter of English law, the items listed on the CPS's disclosure schedule were relevant or possibly relevant to Appellants' defense and thus were discoverable. The magistrate judge demonstrated proper respect for that finding, and did not expressly reject Appellants' request because they failed to show relevance.

The magistrate judge did, at certain junctures in her opinion, question the sufficiency of Appellants' showing of a powerful *need* for some of these materials; she did so, however, not in the context of discussing relevance, but rather in the analytically distinct context of determining whether the Government's claims of privilege and statutory immunity should be sustained. Moreover, although the relevance of a piece of evidence to the subject matter of the case is obviously a consideration in evaluating a party's need for that

evidence, it is by no means the only consideration. It is often the case that a piece of evidence may be relevant (as that concept is defined under applicable law) without being so vital or unique that powerful competing interests such as those embodied in a privilege must give way. Indeed, Judge Elwen expressly recognized this fact by qualifying the ruling as to discoverability and making it "subject to any claim as to privilege, immunity, or otherwise as may be asserted by those with possession of the documents and upheld by the appropriate American judicial authority." As this language underscores, Judge Elwen made no attempt to rule that the Appellants had demonstrated sufficient particularized need for the materials to overcome a claim of privilege or statutory immunity; indeed, Judge Elwen made no express finding at all regarding Appellants' relative need for these materials, and simply held that Appellants met the threshold test for discoverability under English law subject to any satisfactory claims of privilege.

Accordingly, the district judge did not err by failing to equate Judge Elwen's finding of "relevance or possible relevance" with a finding that the Appellants' need for these materials is powerful enough to overcome the privileges and immunities that otherwise attach to these items.[9]

We turn, then, to the particular claims of privilege upheld by the magistrate judge. We see no reversible error in the district court's implicit finding that Appellants failed to establish the particularized need required for disclosure of secret grand jury materials. With limited exceptions not applicable here, the disclosure of grand jury materials must first be authorized by the court. *See* Fed.R.Crim.P. 6(e)(2),(3). In light of the benefits of maintaining the secrecy of grand jury proceedings, "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, ... the burden of demonstrating this balance rests upon the private party seeking disclosure." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218-19, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). The Supreme Court has repeatedly stressed the wide discretion given district courts in evaluating whether disclosure of grand jury materials would be appropriate. *See, e.g., United States v. John Doe, Inc. I,* 481 U.S. 102, 116, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987).

Under this Court's precedent, in order to obtain disclosure of protected grand jury materials, a person

---

[9]Appellants suggest that by her approach, and particularly her stated intent to "enforce" Judge Elwen's order, the magistrate judge denied them a sufficient opportunity to establish their need for the materials. Having reviewed the record, including the transcript of the hearing before the magistrate judge, we reject Appellants' contention. This argument is little more than a variation on Appellants' unpersuasive claim that Judge Elwen's order had already decided Appellants' substantial, particularized need for the materials. In any event, Appellants had ample opportunity during the hearing before the magistrate judge, and thereafter, to take into account case law discussing the need requirement and make whatever presentation or motion (such as an application for in camera review) that they felt might be helpful in overcoming the Government's objections.

must show a "particularized need" for them. *United States v. Cole,* 755 F.2d 748, 758-59 (11th Cir.1985) (citing *United States v. Tucker,* 526 F.2d 279, 282 (5th Cir.1976)). Parties seeking grand jury materials "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only the material so needed." *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. 1667; *see also id.* at 221, 99 S.Ct. 1667 (holding that the requesting party must demonstrate that without the requested materials "a defense would be greatly prejudiced or ... an injustice would be done").

Appellants contend that the magistrate judge should have ordered disclosure of the grand jury materials over the Government's objection. They do so in part based on the mistaken premise, discussed above, that the English court's finding of "relevance or possible relevance" under English law suffices as a determination of particularized need under American law regulating the disclosure of grand jury material. They also assert that there is sufficient evidence in the record to demonstrate the exculpatory nature of the materials sought and thereby to show a particularized need for those materials. But Appellants' blanket request for *all* of the unused grand jury materials from the *Ojomo* prosecution cannot be described as the kind of particularized request required for the production of otherwise secret information. Moreover, the breadth of Appellants' request, while understandable to some extent given their lack of access to the materials, makes it virtually impossible for them to demonstrate that each of hundreds of sought-after grand jury items is likely to be exculpatory in the ways they suggest, especially given the representation by the Government's attorney on the record that these items do not mention, let alone exculpate, the Appellants.[10]

Finally, Appellants' arguments as to need are presented at the very highest order of abstraction; the fact that these items are being sought by defendants in a criminal case for use in defending the charges brought against them is insufficient standing alone. *See Cole,* 755 F.2d at 758-59; *see also United States v. Rockwell Int'l Corp.,* 173 F.3d 757, 760 (10th Cir.1999) (discussing particularized need requirement and stressing that "[n]o grand jury testimony is to be released for the purpose of a fishing expedition or to satisfy an unsupported hope of revelation of useful information"). The district court did not abuse its broad

---

[10] For example, Appellant Raji asserts that disclosure of these items is vitally necessary so that he may prove that he was not involved in the alleged fraud; as he sees it, the absence of any reference to him in the materials helps him establish his lack of connection to the fraud. But we fail to see how this theory establishes a sufficiently compelling need for the production of literally hundreds of sensitive items, particularly when the Government has apparently volunteered to provide sworn affidavits confirming that Appellants are not mentioned at all in the materials.

discretion in declining to grant Appellants' request for secret grand jury material.

Similarly, the district court did not abuse its discretion by declining to order the production of the Government's confidential work product. The work-product doctrine reflects the strong "public policy underlying the orderly prosecution and defense of legal claims." *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The privilege applies in criminal matters as it does in civil cases. *See, e.g., United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ("Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case."). Specifically, Rule 16(a)(2) of the Federal Rules of Criminal Procedure does not permit "the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case." Fed.R.Crim.P. 16(a)(2).

Although we have never addressed the precise contours of Rule 16(a)(2), courts have generally explained in civil matters that to overcome the work product privilege a person must show both a substantial need for the information and that seeking the information through other means would cause undue hardship. *See, e.g.,* Fed.R.Civ.P. 26(b)(3); *Hickman,* 329 U.S. at 512-13, 67 S.Ct. 385 (party must show that production of the material is not merely relevant, but also necessary). Even that showing does not suffice when considering so-called "opinion" work product, such as internal memoranda, that reflects an attorney's mental impressions; these materials are almost always protected from disclosure. *See, e.g., Hickman,* 329 U.S. at 510, 67 S.Ct. 385; *Williamson v. Moore,* 221 F.3d 1177, 1182 (11th Cir.2000) (noting in dispute under Fed.R.Crim.P. 16(a)(2) that "opinion work product enjoys almost absolute immunity" from discovery). We observe that some courts appear to have read Fed.R.Civ.P. 16(a)(2) as providing that same kind of unwavering protection to all work product in criminal matters. *See United States v. Fernandez,* 231 F.3d 1240, 1247-48 (9th Cir.2000); *United States v. Mann,* 61 F.3d 326, 331 (5th Cir.1995).[11]

---

[11]Even items that are material and exculpatory to a defendant, and therefore potentially within the ambit of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), are not necessarily outside the protections of Rule 16(a)(2). *See Mincey v. Head,* 206 F.3d 1106, 1133 n. 63 (11th Cir.2000) (noting that neither the Supreme Court nor this Court has held that *Brady* requires disclosure of a prosecutor's work product). Rule 16(a)(2), unlike its civil counterpart (Fed.R.Civ.P. 26(b)(3)), does not contain any express exception or state any circumstances under which work product may be discovered, although the Rule does not necessarily preclude the possibility that other laws may nevertheless require

We need not define today the additional limitations, if any, imposed by Rule 16(a)(2) on the discoverability of work product for use in criminal matters because even using the common-law standard of *Hickman* for non-opinion work product in a civil case, Appellants have not shown reversible error. Having reviewed the record in detail, we conclude that the magistrate judge did not abuse her discretion by sustaining the Government's claims of work product. Although Appellants assert that the magistrate judge accorded work product status to documents that did not constitute work product, they fail to identify the specific items that they believe should not have been regarded as work product. Our own review of the hearing transcript and the descriptions printed on the CPS's disclosure schedule confirm that most if not all of the items identified by the magistrate judge as work product fall acceptably within that definition (indeed, at least some of these items appear to be opinion work product). Moreover, for the reasons stated above, Appellants have not shown a substantial need for production of these materials at this time. Although Appellants cite frequently to Judge Elwen's finding of "relevance or possible relevance," that finding alone does not overcome a valid claim of work product privilege. On this record, we find no abuse of discretion in the district court's conclusion.

We reject as well Appellants' argument that the magistrate judge erred in rejecting their request for records of intercepted conversations. Title III of the Federal Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510, *et seq.,* regulates the collection and disclosure of wiretap evidence. The statute requires that the contents of intercepted conversations be sealed. *See* 18 U.S.C. § 2518(8)(a). Those contents may be disclosed only in a limited number of instances. *See id.* § 2517. The statute also makes it an offense to disclose material covered by the statute in the absence of statutory authorization. *Id.* § 2511(1). Courts interpreting these provisions have held that the statute generally bars the disclosure of the contents of conversations intercepted through a wiretap absent a specific statutory authorization. *See, e.g., Nix v. O'Malley,* 160 F.3d 343, 351 (6th Cir.1998) (noting that the federal wiretap statute permits disclosure in limited instances but that its plain language allows no additional exceptions); *In re Motion to Unseal Electronic Surveillance Evidence,* 990 F.2d 1015, 1018 (8th Cir.1993) (en banc) ("When addressing disclosure of the contents of a wiretap, the question is whether Title III specifically authorizes such disclosure, not whether Title III specifically prohibits disclosure, for Title III prohibits all disclosures not

---

production of work product. *See United States v. Armstrong,* 517 U.S. 456, 474, 116 S.Ct. 1480, 134 L.Ed.2d 687 (Breyer, J., concurring).

authorized therein."); *United States v. Dorfman,* 690 F.2d 1230, 1232 (7th Cir.1982) ("[B]y permitting disclosure of lawfully obtained wiretap evidence only under the specific circumstances listed in 18 U.S.C. § 2517, Title III implies that what is not permitted is forbidden[.]").

The magistrate judge properly concluded that the involuntary disclosures of wiretap material sought here are not permitted by the statute. Appellants maintain that the wiretap material should be ordered produced pursuant to the exception contained in § 2517(1), which provides:

> Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

18 U.S.C. § 2517(1). Appellants emphasize that the material in question has been sought by British law enforcement officials (the CPS, in its October 1999 letter). Appellants also emphasize that the agents of the United States from whom the materials are sought will be called as witnesses during the English prosecution, at which point they will be called upon to testify regarding the disputed materials, making eventual disclosure inevitable.

These arguments are unhelpful. No language in the federal wiretap statute suggests that foreign law enforcement officers are covered by § 2517(1). Nor are we aware of any indication in the statute or elsewhere that Congress intended this narrow exception to apply to foreign law enforcement officers. On the contrary, the statute defines "[i]nvestigative or law enforcement officer" as "any officer *of the United States or of a State or political subdivision thereof,* who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses." 18 U.S.C. § 2510(7) (emphasis added). Section 2517(1), therefore, does not authorize the involuntary disclosure sought here. Nor does § 2517(2), also cited by Appellants, permit the Court to order this disclosure over the objection of the Government. *See* 18 U.S.C. § 2517(2) ("Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom *may* use such contents to the extent such use is appropriate to the proper performance of his official duties." (emphasis added)).

Moreover, even if we were to assume that the wiretap statute leaves a federal court the discretion to order in limited circumstances the release of wiretap information over the objection of the Government and

in the absence of a clear statutory authorization (a proposition squarely at odds with the case law), the district court did not abuse its discretion by finding that Appellants failed to demonstrate a sufficient need for this information. We observe as well that none of the particular information at issue has been made public, and that speculation by the Appellants that some of this protected information may eventually be revealed voluntarily by agents of the United States during the English court proceedings cannot justify present involuntary disclosure in violation of American law.

Finally, Appellants' argument that the Government is required to produce the requested items under the doctrine of "judicial estoppel" is without merit. Appellants contend that, by previously volunteering to disclose certain materials, the Government is estopped from claiming now that related but undisclosed documents are protected from disclosure by either a privilege or a lack of statutory authorization. " 'Judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings.' " *McKinnon v. Blue Cross & Blue Shield of Ala.,* 935 F.2d 1187, 1192 (11th Cir.1991) (quoting *American Nat'l Bank v. Federal Deposit Ins. Corp.,* 710 F.2d 1528, 1536 (11th Cir.1983)). There has been no such change of positions here. The fact that the Government agreed to disclose certain information in response to limited initial requests, but then declined to do so again when the scope of the requests expanded to include a substantial amount of additional, different information, does not gives rise to judicial estoppel. Moreover, at all times, the Government took the position that court approval would be required before *any* disclosure of grand jury or wiretap information could be made. We see no basis for applying judicial estoppel in this case; indeed, a contrary holding might effectively discourage the Government from attempting to narrow potential document production disputes voluntarily when confronted with future requests for assistance from courts or persons abroad.

To summarize, the scope of our review in this appeal is limited and deferential. The district court gave the required respect to the English court's order and the important considerations of comity underlying § 1782, but recognized that competing domestic law enforcement and privacy concerns articulated by the Government justified withholding some (but not all) of the items in question. On this record, we are unconvinced that the district court abused its broad discretion in declining to order further disclosure. *See Davenport Recycling Assocs. v. Commissioner of Internal Revenue,* 220 F.3d 1255, 1258 (11th Cir.2000) ("We will reverse for abuse of discretion only if we have a definite and firm conviction that the [c]ourt committed a clear error of judgment in the conclusion it reached.") (citation omitted). We therefore must

affirm the district court's order.[12]

AFFIRMED.

---

[12]During proceedings below the Government "preserved" but did not press its argument that this proceeding is barred by the doctrine of sovereign immunity. The Government took a similar approach at oral argument. The applicability of sovereign immunity principles to proceedings under § 1782 is a substantial and largely unexplored question that has not been sufficiently briefed by the parties. We therefore follow the Government's lead and do not resolve that issue today, because we conclude that the Government plainly is entitled to prevail on narrower grounds. *See also Al Fayed v. United States,* 210 F.3d 421, 425 (4th Cir.2000) (declining to reach the question of whether the Government constituted a "person" under § 1782 after finding that the district court did not abuse its discretion in denying the disclosure of material that could impact national security).