[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-10096
Non-Argument Calendar

————————————————

D.C. Docket No. 1:18-mc-21202-JAL

In re Application of
VICTORIA, LLC,
a foreign company,

Petitioner – Appellee,

versus

ILIYA LIKHTENFELD,
REBEL WORLD, INC.,
GIPSY ENTERTAINMENT GROUP, LLC,

Respondents – Appellants.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(October 24, 2019)

Before MARCUS, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

This case involves the authority of the federal district courts to assist litigants before foreign tribunals with the production of discovery in the United States, under 28 U.S.C. § 1782. The Appellants are debtor Iliya Likhtenfeld, a Russian native and Florida resident, and two Florida-registered companies he owns or is affiliated with -- Gipsy Entertainment Group, LLC ("Gipsy"), and Rebel World, Inc. ("Rebel World"). Appellee Victoria, LLC ("Victoria"), a Russian-registered debt-collection company, filed a § 1782 application in the United States District Court for the Southern District of Florida in order to obtain discovery from the Appellants. According to Victoria, the discovery would reveal evidence of Likhtenfeld's assets in the United States, personally and through Gipsy and Rebel World, to be used in Russian bankruptcy proceedings against him and four of his Russian-registered companies. After the district court granted Victoria's § 1782 application and issued subpoenas, the Appellants moved to quash the subpoenas and vacate the § 1782 order, or, alternatively, to hold an evidentiary hearing and grant reciprocal discovery. In November 2018, a magistrate judge issued an order denying those motions and a supplemental Confidentiality and Protective Order, and the district court affirmed. After careful review, we affirm.

I.

Here are the essential facts and procedural history. Likhtenfeld owned several Russian-registered restaurants, cafeterias, and nightclubs in Moscow, five of which

were collectively called the "IL Companies."  In 2014, the IL Companies signed 15 loan agreements with MKB Bank, borrowing over $24.6 million U.S.D., guaranteed by Likhtenfeld personally and the other IL Companies.  In February 2015, the IL Companies defaulted on the MKB loans.  Soon thereafter, Likhtenfeld moved to Florida, where he now resides and has since owned, been affiliated with, or held officer positions in several Florida companies, including Gipsy and Rebel World.

In the fall of 2015, MKB assigned ten of the IL Companies' defaulted loans to Victoria, for a total debt amount of about $16.7 million U.S.D., making Victoria MKB's successor in collecting the debt.  Victoria filed claims for monetary damages in Horoshevskiy District Court in Moscow ("Russian District Court") against a few IL Companies and against Likhtenfeld as a loan guarantor.  Finding for Victoria, the Russian District Court issued a judgment against the borrowers and guarantors, including Likhtenfeld.

In late 2016, another creditor of Likhtenfeld and the IL Companies filed five petitions in the Moscow Arbitrazh Court ("Russian Bankruptcy Court") to declare them bankrupt -- one petition against Likhtenfeld personally, and four against four IL Companies.  In the IL Companies' bankruptcy proceedings, the companies were declared bankrupt or insolvent, trustees were appointed to collect funds and administer the bankruptcy estate, and Victoria successfully filed claims for inclusion in the creditor's registry for two IL Companies.  In Likhtenfeld's personal

3

bankruptcy proceedings, Likhtenfeld's counsel requested that he be found insolvent and his estate liquidated, but did not submit a schedule of assets nor disclose his United States assets. The Russian Bankruptcy Court declared Likhtenfeld insolvent and issued an order permitting the trustee to collect funds for the bankruptcy estate and to sell the debtor's known assets. Separately, the Russian Bankruptcy Court granted, and reinstated on remand, Victoria's creditor claim against Likhtenfeld.

The trustees for all five bankruptcy proceedings listed only property located in Russia based on the information available from Russian governmental sources, and, due to limited financial resources, have neither requested any information from the U.S. court system nor opened an ancillary proceeding under Chapter 15 of the U.S. Bankruptcy Code. Likhtenfeld has not appeared in person in the Russian Bankruptcy Court for any of these proceedings, all of which remain pending.

In March 2018, Victoria filed its § 1782 application in the Southern District of Florida, seeking leave to serve subpoenas for testimony and production of documents for use in the Russian bankruptcy proceedings to which it was a creditor-party. Victoria alleged that Likhtenfeld was an owner of more than 40 Moscow-registered entities, and just before the bankruptcy proceedings, he transferred MKB-borrowed funds to family members or trusted representatives; those funds were sent to the United States and used, in part, to fund his "luxurious" lifestyle in Florida; and he either owned, was affiliated with, or held officer positions in Gipsy, Rebel

4

World, and two other Florida companies.  Victoria sought documents and depositions from Likhtenfeld, "corporate designee[s]" and others affiliated with his Florida companies, and Florida banks with which he did business.  Victoria said this discovery would help in the Russian bankruptcy proceedings by supporting an objection Victoria planned to lodge as to the dischargeability of debt; to prove that Likhtenfeld had failed to disclose all his assets; and to trace the disposition of funds from the MKB loans to Likhtenfeld's Florida businesses and bank accounts.  Victoria added that it also planned to bring a debt recovery and/or civil fraud suit against the Appellants and could use the discovery for that purpose too.

The district court granted the § 1782 application, authorized Victoria to issue its requested subpoenas, and directed the parties named in the subpoenas to comply. In response, the Appellants moved to quash the subpoenas and to vacate the order granting the § 1782 application, claiming that while Victoria's application appeared to be a legitimate attempt by a creditor to collect a debt, Victoria's allegations were a pretext in an effort to harass him, keep the Russian businesses they illegally took from him, and steal his current businesses.  The district court referred the motion to quash and vacate to a magistrate judge pursuant to the Federal Magistrate's Act, 28 U.S.C. § 636(b)(1)(A), and the Appellants made no objection to the referral.

After holding a hearing, the magistrate judge denied the Appellants' request for an evidentiary hearing; denied their motion to quash and vacate; and denied their

5

request for reciprocal discovery.  Thereafter, with the parties' input, the magistrate judge issued a Confidentiality and Protective Order, substantially limiting Victoria's use of confidential and protected information obtained in discovery.  On January 11, 2019, the district court issued an order rejecting the Appellants' objections to the magistrate judge's orders and their appeal, concluding that the magistrate judge's determinations were not clearly erroneous nor contrary to law.  This appeal follows.

II.

Section 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .  The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . .  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

Under § 1782, "district courts have the power to provide assistance to foreign courts by responding to . . . requests from interested parties," like Victoria here. United Kingdom v. United States, 238 F.3d 1312, 1318 (11th Cir. 2001).  "Whether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to "the sound discretion of the district court." Id. at 1318-19.  "Because Congress has given the district courts such broad discretion in granting

judicial assistance to foreign countries," we review a district court's § 1782 ruling only for abuse of discretion. Id. at 1319 (quotations omitted). This review is "extremely limited and highly deferential." Id. We also review the district court's denial of the motion to quash only for abuse of discretion. Jordan v. Comm'r, Miss. Dep't of Corr., 908 F.3d 1259, 1263-64 (11th Cir. 2018) (viewing a motion to quash -- which in that case was ancillary to § 1983 litigation pending elsewhere -- as a routine, non-dispositive pretrial discovery motion even though it required separate litigation between the parties and the magistrate judge's ruling on the motion resulted in a final disposition of the issues raised therein). Under abuse-of-discretion review, we leave the district court's decision undisturbed unless the court made a clear error of judgment or applied the wrong legal standard. Id. at 1263.

"[T]o the extent the district court's decision is based on an interpretation of law, our review is de novo." United Kingdom, 238 F.3d at 1319 n.8. Thus, we review de novo the court's interpretation of § 1782. In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007). In addition, we review any underlying fact findings for clear error. Dep't of Caldas v. Diageo PLC, 925 F.3d 1218, 1221 (11th Cir. 2019).[1]

---

[1] We observe, an initial matter, that we have jurisdiction over this appeal. Our appellate jurisdiction is usually limited to the "final decisions of the district courts." 28 U.S.C. § 1291. Applying § 1291, we've said that a district court's ruling on a § 1782 application is final and appealable because the only issue in the district court proceeding was whether to permit discovery. In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1274 n.6 (11th Cir. 2014). We've also held that while the denial of a motion to quash a subpoena is typically not appealable by a subpoenaed party, an order denying a motion to quash in a § 1782 proceeding is final for purposes of § 1291 since the district court's resolution of the

III.

The Appellants' primary claim is that the district court abused its discretion in denying their motion to quash the subpoenas and vacate the order granting Victoria's § 1782 application. We disagree. Our inquiry begins with whether the district court had the authority to grant a § 1782 application. Consorcio, 747 F.3d at 1269. For it to, an applicant must meet the statute's four prima facie requirements:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

Id. (quotation omitted). So long as these requirements are met, § 1782(a) "authorizes, but does not require, a federal district court to provide assistance." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 255 (2004).

---

parties' evidentiary motions leaves no further case or controversy. In re Furstenberg Fin. SAS v. Litai Assets LLC, 877 F.3d 1031, 1033-34 (11th Cir. 2017). Here, instead of appealing from the district court's grant of Victoria's § 1782 application, the Appellants chose to move to quash the subpoenas and vacate the court's § 1782 order -- matters the district court referred to a magistrate judge, who denied the Appellants' motions and requests in full. The district court then rejected the Appellant's objections in several orders, the last one dated January 11. The January 11 order was a final, appealable order that ended the § 1782 litigation on the merits -- the only issue was whether to permit discovery -- and left nothing for the court to do but execute the subpoenas pursuant to the § 1782 application. See id. Thus, the Appellants' timely filed amended notice of appeal gave us jurisdiction over the January 11 order. While the amended notice of appeal also drew into its purview prior non-final orders, giving us jurisdiction over an earlier district court order dated December 26, see Barfield v. Brierton, 883 F.2d 923, 930-31 (11th Cir. 1989), the Appellants have not raised any issues on appeal concerning the December 26 order, so they have abandoned them, see Brown v. United States, 720 F.3d 1316, 1332 (11th Cir. 2003) (holding that an issue not plainly and prominently addressed in an initial brief will be considered abandoned).

8

The Appellants do not dispute that requirements (1), (2), and (4) have been met. They solely dispute the third statutory factor -- that the evidence must be sought "for use in a proceeding in a foreign or international tribunal." As for this factor, they argue that Victoria's claim failed to specify that it would bring a lawsuit in a foreign jurisdiction and was too speculative to be considered a "reasonably contemplated" foreign proceeding for § 1782 purposes. See Clerici, 481 F.3d at 1333 (holding that the foreign proceeding for which the discovery is sought need not be pending or imminent under § 1782, but it must be within reasonable contemplation). They also argue that Victoria's failure to deny that the contemplated actions could be brought in the United States showed that Victoria evidenced its lack of candor, intent to harass them, and use of the bankruptcy proceedings as a pretext.

We are unpersuaded. For starters, the magistrate judge expressly found that the discovery was "clearly for use in foreign proceedings over [in Russia] in the bankruptcy proceedings," making no mention of any other contemplated civil actions Victoria sought to bring against the Appellants. While the magistrate judge noted that Victoria had added in its application that the discovery "may be used for other proceedings," the magistrate judge advised that, "in order for me to allow the discovery, it has to relate to a foreign proceeding now and not to a domestic proceeding." Victoria did not object and seek discovery for use in other proceedings. The magistrate judge confirmed in a later Confidentiality and Protective Order that

9

the use of the confidential records was limited to the district court in the § 1782 proceedings, the Russian Bankruptcy Court in Likhtenfeld's and his four Russian companies' Russian bankruptcy cases, and "any current or future proceeding(s) before any tribunal (within the meaning of 28 U.S.C. § 1782) arising from or relating to Likhtenfeld's insolvency and MKB Bank Loans."  Indeed, in denying the Appellants' appeal of the magistrate judge's denial of their motion to quash and vacate, the district court concluded that the magistrate judge did not clearly err in finding that the sought evidence was for use "specifically in the Russian [B]ankruptcy [C]ourt."  Nor do we discern any clear error.  Victoria made clear in its filings, and at the hearing on the Appellants' motion to quash and vacate, that its discovery would be used in the Russian bankruptcy proceedings, and not in any other contemplated civil actions.  See Dep't of Caldas, 925 F.3d at 1221.

Because neither the district court nor the magistrate judge clearly erred as to the third prong of the statute -- the only prong the Appellants challenge -- we conclude that Victoria's application satisfied the prima facie requirements of § 1782, and thus, that the district court had authority to grant the application.

We also conclude, moreover, that upon determining that it had the authority to grant the application, the district court did not abuse its discretion in granting it. According to the Supreme Court, once the § 1782 prima facia requirements are met, the district court should consider these discretionary factors:

10

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome."

Intel, 542 U.S. at 264-65.  The court also may consider whether the application was made in bad faith or for the purpose of harassment.  United Kingdom, 238 F.3d at 1319.  The Appellants do not dispute that the first Intel factor did not favor them.

The Appellants largely argue that the district court, in considering factors (2)-(4), ignored or misconstrued their allegations about "Reiderstvo" practices in Russia, which they say are "strong arm tactics" used by "powerful people" and "sophisticated companies" in Russia to forcibly steal corporate rights without due process.  As for the second factor -- about the foreign tribunal, proceedings and receptivity to U.S. court assistance -- the district court found that the Appellants had failed to allege that the Russian Bankruptcy Court judges adjudicating their bankruptcies were complicit in the Reiderstvo tactics.  This was not clear error.  The Appellants' allegations, even on appeal, still focus on MKB's and its officials' involvement in the tactics.  To the extent they suggest that judicial officers are implicated in the Reiderstvo tactics when they're bribed so that business owners are placed or threatened to be placed in prisons, or that the Reiderstvo tactics are

11

"enabled by a corruptible political and legal system," these claims are general and speculative, and fail to implicate the Russian bankruptcy courts in particular, as opposed to the criminal courts or other courts. Nor, for the same reasons, did the district court clearly err in finding that the Appellants' Reiderstvo allegations only related to Russian business culture or, possibly, the merits of the Appellants' defenses, rather than the concerns found in Intel's second factor, which contemplates the climate of the foreign court and proceedings to ascertain how receptive it will be to the sought discovery. See Clerici, 481 F.3d at 1334. Because the Appellants have failed to show that the Russian Bankruptcy Court would be unreceptive to discovery, there was no abuse of discretion nor clear error in the determination that the second Intel factor favored discovery. See id.

As for the third factor -- whether the request is an attempt to avoid U.S. or foreign laws or policies -- the district court first considered the Appellants' allegation that Victoria was attempting to use § 1782 to avoid compliance with Russian discovery laws and concluded that the magistrate judge's finding that Victoria did "no[t] attempt to conceal or circumvent the foreign proof gathering" was not clearly erroneous or contrary to law, a determination the Appellants do not challenge here. The district court also made an independent finding that the Appellants' "due process and fundamental fairness concerns [were] unfounded" because Likhtenfeld's submission to a counseled deposition in the United States would provide him an

12

opportunity to be heard on his Reiderstvo allegations in the Russian bankruptcy proceedings, without fear of suffering further tactics.  This finding was not clearly erroneous; the Appellants have never alleged that Likhtenfeld would be at risk of wrongful imprisonment if he defended himself from the United States, as opposed to from Russia.  In fact, Likhtenfeld has been defending himself in the Russian bankruptcy proceedings from the United States via counsel and has never said he's suffered new Reiderstvo threats.  Further, any claims that Likhtenfeld or his family or colleagues are at risk of Reiderstvo threats are speculative based on the protections afforded by the Confidentiality and Protective Order.  Thus, the district court did not clearly err in finding that the third Intel factor favored discovery.[2]

Nor did the district court clearly err in concluding, for purposes of the fourth Intel factor, that § 1782 discovery would not be "unduly intrusive or burdensome." As the record reflects, the district court considered Victoria's conduct in the litigation; recognized that the magistrate judge had significantly limited discovery at the hearing and via its Confidentiality and Protective Order; and found that the Appellants thereafter only provided one specific example of how the discovery was overbroad or intrusive -- a claim that failed because it concerned a subpoena they

---

[2] The Appellants add that the district court failed to consider that their Reiderstvo allegations challenged U.S. fundamental policies of freedom from tyranny, unjust takings, oppression by corruption, and arbitrary incarceration, and that the death of Russian attorney Sergei Magnitsky also is against U.S. policies.  Once again, these allegations are general and speculative, and, do not suggest that the district court clearly erred in finding that these concerns do not specifically relate to the Appellants' bankruptcy proceedings in Russia, as § 1782 contemplates.

13

lacked standing to challenge.  The Appellants do not challenge any of these findings or conclusions on appeal, nor do they provide sufficient detail about why the subpoena was intrusive or burdensome.  Rather, the Appellants argue only that the district court made no explicit determination as to whether Victoria's application was filed in bad faith or to harass.  But as the record reveals, the district court resolved any concerns about this factor by significantly trimming Victoria's discovery requests, which it was permitted to do.  See Clerici, 481 F.3d at 1334 ("The Supreme Court in Intel added that 'unduly intrusive or burdensome requests may be rejected or trimmed.'" (quotation omitted)).  The Appellants have not shown how the district court's decision to limit discovery, instead of denying discovery altogether, was an abuse of discretion.  Thus, we can find no abuse of discretion, nor clear error, nor contrary application of the law in the determination that the fourth Intel factor favored discovery.

In short, after considering the Intel factors and the record as a whole, we cannot conclude that the district court abused its discretion in granting the § 1782 application, nor in affirming the magistrate judge's order denying their motion to quash the subpoenas and vacate the order granting the application.  See AbbVie Prods. LLC, 713 F.3d at 61.  We therefore affirm as to this issue.[3]

---

[3] The Appellants also argue that the district court erred as a matter of law in refusing to hold an evidentiary hearing.  But they've not pointed to any binding law requiring evidentiary hearings in § 1782 proceedings, let alone under the circumstances here.  The magistrate judge declined to hold

14

IV.

Finally, the Appellants argue that the district court abused its discretion in refusing to grant reciprocal discovery. We again are unconvinced. After hearing the parties' arguments on the reciprocal discovery request, the magistrate judge found that reciprocal discovery was discretionary and denied the request because it "would do nothing but delay this [proceeding]" and appeared to be requested to determine "whether or not MKB had some relationship with Victoria," which was not at issue in the § 1782 proceedings. We cannot discern how these findings were clearly erroneous or contrary to law, and the Appellants' reliance on non-binding caselaw does not change this conclusion. See Clerici, 481 F.3d at 1331; United Kingdom, 238 F.3d at 1319 n.8.

**AFFIRMED.**

---

an evidentiary hearing on two issues he determined were not relevant -- whether Likhtenfeld actually owned the businesses that MKB allegedly seized by Reidersvto tactics and whether Victoria was a shell company for MKB -- and Appellants have failed to show how these issues mattered to the § 1782 proceeding, nor why the magistrate judge should have held an evidentiary hearing on inconsequential matters. See, e.g., Cano v. Baker, 435 F.3d 1337, 1342-43 (11th Cir. 2006) (holding that the district court did not abuse its discretion in denying the movant's request for an evidentiary hearing where it "would have served no useful purpose in aid of the court's analysis of the threshold questions presented, which, as we explained, precluded the relief . . . sought").