[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12897

_____

D.C. Docket No. 1:10-mc-22320-DLG

APPLICATION OF CONSORCIO ECUATORIANO DE
TELECOMUNICACIONES S.A.,
Pursuant to 28 USC 1782 for Judicial Assistance in
Obtaining Evidence From JAS Forwarding (USA), Inc.,
For Use In a Foreign Tribunal,

Plaintiff - Appellee,

versus

JAS FORWARDING (USA), INC.,

Defendant,

JET AIR SERVICE EQUADOR S.A.,

Intervenor - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 10, 2014)

Before MARCUS and BLACK, Circuit Judges, and HODGES,[*] District Judge.

_____

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

MARCUS, Circuit Judge:

We sua sponte vacate the prior opinion in this case, issued on June 25, 2012 and published at 685 F.3d 987 (11th Cir. 2012), and substitute the following opinion in its place.

This appeal arises out of a foreign shipping contract billing dispute between Consorcio Ecuatoriano de Telecomunicaciones S.A. ("CONECEL") and Jet Air Service Equador S.A. ("JASE"). CONECEL filed an application in the Southern District of Florida under 28 U.S.C. § 1782 to obtain discovery for use in foreign proceedings in Ecuador. According to CONECEL, the foreign proceedings include both a pending arbitration brought by JASE against CONECEL for non-payment under the contract, and contemplated civil and private criminal suits CONECEL might bring against two of its former employees who, CONECEL claims, may have violated Ecuador's collusion laws in connection with processing and approving JASE's allegedly inflated invoices. CONECEL's application seeks discovery from JASE's United States counterpart, JAS Forwarding (USA), Inc. ("JAS USA"), which does business in Miami and was involved in the invoicing operations at issue in the dispute. The district court granted the application and authorized CONECEL to issue a subpoena. Thereafter, JASE intervened and moved to quash the subpoena and vacate the order granting the application. The

2

district court denied the motion, as well as a subsequent motion for reconsideration. JASE now appeals the denial of both.

After thorough review and having had the benefit of oral argument, we affirm the orders of the district court. We hold that CONECEL's contemplated suits in Ecuador against its former employees satisfy the statutory requirements, because, as the Supreme Court put it in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), the anticipated proceedings were "within reasonable contemplation." Id. at 259. We also hold that the district court did not abuse its considerable discretion in granting the section 1782 discovery application over JASE's objections that it would be forced to produce proprietary and confidential information. The application was narrowly tailored and primarily requested information concerning JASE's billing of CONECEL, which is undeniably at issue in the current dispute between the parties. Finally, the district court did not abuse its discretion in denying JASE's motion for reconsideration.

**I.**

CONECEL and JASE have had a lengthy contractual relationship that reaches back at least a decade.[1] JASE agreed to provide transportation logistics services in connection with the international transportation of cell phones and accessories for CONECEL. The contracts between the parties contain descriptions

---

[1] The agreements themselves are confidential and not part of the record. The parties both describe in materially similar terms the overall contours of the agreements, however.

of the potential services to be provided by JASE and detailed terms pertaining to the rate to be charged per applicable unit of weight transported. According to CONECEL, between 2002 and 2007 JASE invoiced, and CONECEL paid, more than $88 million for services rendered under the contracts. The relationship between the parties soured in 2008, and CONECEL contends that an internal investigation and audit "using the limited documentation in its possession" revealed that CONECEL had been improperly overbilled by millions of dollars.

CONECEL says that the agreements between the parties provided that CONECEL would pay the rate specified by the agreements (in terms of dollars per unit of weight) multiplied by the weight of the shipment. CONECEL contends that JASE introduced an "extra-contractual multiplication factor" into the equation, which "varied from shipment to shipment based on factors that are not known to CONECEL."[2] CONECEL also claims that the calculation of the "chargeable weight" of the shipments was erroneous.

---

[2] Specifically, CONECEL claims that JASE inflated the invoices in this way:

> Stated mathematically, the process employed by JAS Ecuador looked like this: (gross weight or volumetric weight, whichever was higher) x (the extra-contractual multiplication factor) x (rate to be charged per the parties' agreement) = amount billed to CONECEL. The extra-contractual multiplication factor applied in this process was at the heart of the scheme which resulted in over-billing and damages to CONECEL.

4

CONECEL reports that an internal investigation and audit has led it to believe that two of its former employees, Lucy Egas Ribadeneira ("Egas") and Germania Narváez ("Narváez"), had a hand in the overbilling scheme. The two former employees allegedly "participated in the processing and approval of JAS Ecuador's invoices during the relevant period and . . . there are indications that Ribadeneira and Narváez may be liable to CONECEL for its damages." CONECEL adds that its contemplated civil action for collusion would be filed in the civil-mercantile court of competent jurisdiction in Quito, Ecuador, and that under the applicable procedural rules, CONECEL must present all of the evidence necessary to support its claims at the moment it files the action. Then, if successful in a civil action, CONECEL could, under Ecuadorian law, pursue a private criminal action against its former employees. Since a party must present its evidence up front along with the pleadings, CONECEL seeks the discovery specified in section 1782 before commencing suit in Ecuador.

Not surprisingly, JASE tells a wholly different story. It claims that in 2008 CONECEL failed to pay several invoices. Pursuant to the contractual agreements between the parties, JASE has pursued arbitration in Ecuador before the Center for Arbitration and Conciliation of the Guayaquil Chamber of Commerce. CONECEL's primary defense in the pending arbitration proceeding is that the invoices do not correspond to the parties' agreed-upon price.

5

## II.

On July 14, 2010, CONECEL filed an ex parte application for judicial assistance in the Southern District of Florida in order to obtain evidence pursuant to 28 U.S.C. § 1782.  Section 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  . . .  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

CONECEL's detailed application, accompanied by two declarations and a memorandum of law, sought evidence from JAS USA relating primarily to the invoicing and calculation of rates charged to CONECEL.[3]  The application was

---

[3] More specifically, CONECEL's application requested the following discovery from the relevant time period of January 1, 2002 up through and including December 31, 2008:

**I.      Document Production**

(a)  Any and all documents pertaining or relating to the rates charged or to be charged to CONECEL for any of JAS Ecuador's or its affiliates' services.

(b)  Any and all documents pertaining or relating to the procedure or methodology for applying the rates to be charged to CONECEL for any of JAS Ecuador's or its affiliates' services.

also accompanied by a sample air waybill purporting to show that JAS USA's Miami office was involved in the provision and invoicing of transport services to CONECEL.

---

(c) Any and all documents pertaining or relating to the calculation of "gross weight" and "chargeable weight" for services provided by JAS Ecuador or its affiliates to CONECEL.

(d) Any and all documents pertaining to Jet Air Service (Ecuador) S.A.'s billing or invoicing to CONECEL.

(e) Any and all documents pertaining to JAS Ecuador Forwarding S.A.'s billing or invoicing to CONECEL.

(f) Any and all documents pertaining or relating to Lucy Egas Ribadeneira.

(g) Any and all documents pertaining or relating to Germania Narváez.

(h) Any and all documents evidencing the actions of and services rendered by JAS USA in connection with shipments to CONECEL or via Jet Air Service (Ecuador) S.A., or JAS Ecuador Forwarding S.A., or JAS USA.

(i) Any and all documents pertaining to any audit, accounting, tabulation or investigation undertaken by JAS USA alone or in collaboration with any of its affiliates in relation to JAS Ecuador's claims in the Ecuadorian Arbitration Case or the actions of former CONECEL employees, Lucy Egas Ribadeneira and / or Germania Narváez.

## II. Deposition(s)

(a) The sworn deposition of the JAS USA person (or persons) with most knowledge regarding:

1. The documents requested by CONECEL, including without limitation their authentication;

2. The services rendered to CONECEL by JAS Ecuador Forwarding S.A., Jet Air Service (Ecuador) S.A., JAS Ecuador, and/or JAS USA from January 1, 2002, up through and including, December 31, 2008.

On July 20, 2010, the district court granted the ex parte application and authorized CONECEL to issue and serve a subpoena on JAS USA seeking the discovery outlined in CONECEL's application. JASE moved to intervene to vacate the order granting the application. After full briefing, the district court permitted the intervention but denied the motion to vacate.

The district court began its analysis by addressing the "primary disputed issue" of "whether the subpoenaed documents will be used in a proceeding [in] a foreign or international tribunal." The court observed that, as interpreted by the Supreme Court, section 1782 does not require that the foreign proceeding be pending or imminent, but rather only that the proceeding "be within reasonable contemplation." Intel, 542 U.S. at 259. The district court determined that CONECEL had "established that the civil and criminal actions are within reasonable contemplation." Having concluded that CONECEL's civil and criminal suits against its two former employees were within reasonable contemplation, the district court did not have to reach the question of whether the pending arbitration between JASE and CONECEL was a proceeding in a foreign tribunal under the statute. The court did observe, however, that "upon a review of the case law, the Court finds that the arbitral tribunal, in this action, is likely within the purview of section 1782."

Finally, as for JASE's argument that the application should have been denied anyway because CONECEL sought confidential materials, the district court rejected the claim this way:

> JAS Ecuador's primary discretionary argument is that the subpoena requests confidential materials. The Court disagrees. The subpoena simply requests information as it relates to how JAS Ecuador billed or invoiced CONECEL. It does not request information on how JAS Ecuador bills other clients. Indeed, it relates directly to the contract at issue -- the same contract JAS Ecuador uses to assert confidentiality. Accordingly, the Court finds this argument without merit.
>
> . . . [T]he Court does not find that JAS Ecuador is embarking on a "fishing expedition." The Court finds the Subpoena narrowly tailored and not unduly intrusive or burdensome. Accordingly, the motion to quash must be denied.

JASE moved for reconsideration; the district court denied the motion, concluding that it appeared to be nothing more than an effort to relitigate matters that the court had already decided. This timely appeal of both the order denying JASE's motion to vacate and the order denying JASE's motion for reconsideration followed.

## III.

A district court's decision to honor or deny a section 1782 discovery request is reviewed for abuse of discretion. United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001). This deferential standard is identical to the one we use when reviewing a district court's ordinary discovery rulings, including rulings

9

such as whether the foundation for a claim of privilege has been established. Id. To the extent the district court's decision is based on an interpretation of law, however, our review is de novo. Id. at 1319 n.8. Thus, we review de novo the district court's interpretation of a federal statute like section 1782. In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007). Finally, we review the district court's denial of a motion for reconsideration only for abuse of discretion. Richardson v. Johnson, 598 F.3d 734, 740 (11th Cir. 2010) (per curiam); Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1285 (11th Cir. 2001).

Three issues are raised in this appeal: first, whether there is a "proceeding in a foreign or international tribunal," 28 U.S.C. § 1782(a), for which CONECEL sought discovery; second, assuming the statutory requirements have been met, whether the district court nonetheless abused its discretion in granting the application because the disclosures would reveal confidential pricing information; and, third, whether the court abused its discretion in denying JASE's motion for reconsideration. We take each issue in turn. We emphasize, however, that this appeal is not about whether JASE actually overbilled CONECEL, with or without the collusion of CONECEL's former employees; or whether CONECEL owes JASE any money under the contracts between the parties; or, finally, whether any other underlying dispute among the parties and related persons has merit. Like the

district court, we have no occasion to address any of these issues, which will likely be resolved in various tribunals in Ecuador.

## A.

Title 28 U.S.C. § 1782 "is the product of congressional efforts, over the span of [more than] 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." Intel, 542 U.S. at 247. Back in the 1850's, Congress first provided for federal-court aid to foreign tribunals, specifically by authorizing the federal courts to respond to letters rogatory forwarded through diplomatic channels. See id. The scope of federal courts' authority to assist foreign tribunals has expanded ever since. In 1948, "Congress substantially broadened the scope of assistance" by "eliminat[ing] the prior requirement that the government of a foreign country be a party or have an interest in the proceeding." Id. at 247-48. As amended in 1949, the new statute, section 1782, allowed for district court assistance with the taking of depositions to be used in any judicial proceeding pending in any court in a foreign country with which the United States is at peace. See id. at 248. In 1964, section 1782 was completely revised and considerably broadened. As revised, the statute provided for assistance in obtaining documentary and other tangible evidence in addition to deposition testimony. Id. In addition, Congress notably deleted the words "in any judicial proceeding pending in any court in a foreign country" and replaced them with the words "in a

11

proceeding in a foreign or international tribunal" in order to ensure that assistance was not confined to proceedings before conventional courts, but rather extended to administrative and quasi-judicial proceedings. See id. at 248-49. Finally, in 1996, Congress broadened the statute further still, adding that proceedings in a foreign or international tribunal "includ[e] criminal investigations conducted before formal accusation." Id. at 249. In short, as this Court had observed even before the 1996 amendment to the statute, "[t]he history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." Lo Ka Chun v. Lo To, 858 F.2d 1564, 1565 (11th Cir. 1988) (emphasis added).

In its present form, section 1782 has four prima facie requirements that must be met before a district court is authorized to grant an application for discovery under the statute:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

In re Clerici, 481 F.3d at 1331-32 (footnote omitted) (quoting 28 U.S.C. § 1782(a)). JASE does not dispute that requirements (1), (2), and (4) have been met here. As a party to the dispute, CONECEL plainly is an "interested person";

CONECEL's application seeks evidence in the form of document production and deposition testimony; and the application seeks discovery from JAS USA, which has an office and does business in Miami and is therefore "found in the district of the district court ruling on the application for assistance" -- namely, the Southern District of Florida.

The only requirement at issue is the third one -- that the evidence sought must be for use in a proceeding in a foreign or international tribunal. JASE claims that there is no such proceeding. CONECEL advances two independent theories for why there is: that CONECEL wants the evidence for use in reasonably contemplated civil collusion proceedings that it may file against two of its former employees; and that the arbitration between the parties is a proceeding already pending in a foreign tribunal. Because we agree that a proceeding exists under the former theory, we need not address the latter.[4]

---

[4] We decline to answer this substantial question on the sparse record found in this case. The district court made no factual findings about the arbitration and made no effort to determine whether the arbitration proceeding in Ecuador amounted to a section 1782 tribunal. Two circuits have held that private arbitral tribunals fall outside of the scope of section 1782. See Nat'l Broad. Co. v. Bear Stearns & Co., 165 F.3d 184, 190 (2d Cir. 1999); accord Republic of Kazakhstan v. Biedermann Int'l, 168 F.3d 880, 881 (5th Cir. 1999). However, since then, the Supreme Court has decided Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 258 (2004), where it applied a functional analysis focusing on whether a body acts as a first-instance adjudicative decision maker, permits the gathering and submission of evidence, has the authority to determine liability and impose penalties, and issues decisions subject to judicial review. See id. at 255 & n.9, 257-58. Moreover, in Intel the Court suggested in dicta that "[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." 542 U.S. at 258 (alterations in original) (emphasis added) (quoting Hans Smit, International

CONECEL claims that it seeks the requested discovery for use in contemplated civil and criminal proceedings in Ecuador against its former employees. We agree that these contemplated proceedings satisfy section 1782. In Intel, the Supreme Court explained that "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings. In 1964, when Congress eliminated the requirement that a proceeding be 'judicial,' Congress also deleted the requirement that a proceeding be 'pending.'" Intel, 542 U.S. at 258. Instead, the Supreme Court held that section 1782(a) requires only that a proceeding "be within reasonable contemplation." Id. at 259; accord In re Letter of Request from the Crown Prosecution Serv. of the U.K., 870 F.2d 686, 691 (D.C. Cir. 1989) (Ginsburg, J.). The future proceedings must be more than speculative, however, and a "district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time." Crown Prosecution Serv., 870 F.2d at 692; see also id. at 691 (describing the "decisive" question as whether there was "sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially").

CONECEL provided such reliable indications here. Its application explained that, after an extensive internal audit, its auditors informed it that "there

_____

Litigation Under the United States Code, 65 Colum. L. Rev. 1015, 1026 n.71 (1965)). Thus we leave the resolution of the matter for another day.

are indications that [Egas] Ribadeneira and Narváez may be liable to CONECEL" in connection with their "processing and approval of JAS Ecuador's invoices during the relevant period." The memorandum of law accompanying the application similarly explained that "an internal investigation and audit by CONECEL pertaining to JAS Ecuador's invoicing revealed that Ribadeneira and Narváez, both former employees, may have acted in concert with others in the processing of JAS Ecuador's invoices, resulting in over-payment by, and monetary losses to, CONECEL." The sworn declaration of CONECEL's Legal and Compliance Director accompanying the application again stated that "CONECEL's internal auditors have also established possible indicia of liability against two former executives of CONECEL, Lucy Egas Ribadeneira and Germania Narváez, both based in Ecuador, and who once held the position of Purchasing Manager at CONECEL and were responsible for approving the invoices issued by JAS Ecuador." According to the declaration, CONECEL contemplates bringing a civil action in the court of competent jurisdiction in Quito, Ecuador. The declaration further explained that Ecuador, like other civil law countries, has laws providing that if successful in this civil action, CONECEL is entitled to pursue a private criminal action against the perpetrators.

JASE contends that this proffer was insufficient to establish a reasonably contemplated foreign proceeding, but the district court committed no error in

crediting CONECEL's detailed explanation of its intent to pursue civil and possibly subsequent criminal proceedings against its former employees for collusion. In response to JASE's argument that CONECEL's failure to bring an action thus far demonstrates that any civil or criminal proceeding is not within reasonable contemplation, CONECEL points out that under Ecuadorian law, it must submit its evidence with the pleading at the time it commences the civil action. The Supreme Court in Intel noted that "[i]n civil law countries, documentary evidence is generally submitted as an attachment to the pleadings or as part of a report by an expert." 542 U.S. at 262 n.14 (quoting Hans Smit, Recent Developments in International Litigation, 35 S. Tex. L. Rev. 215, 235-36 n.94 (1994)). Thus, CONECEL claims that it has not yet brought any action against its former employees because it is still waiting for the evidence it seeks pursuant to the instant discovery application.

In light of CONECEL's facially legitimate and detailed explanation of its ongoing investigation, its intent to commence a civil action against its former employees, and the valid reasons for CONECEL to obtain the requested discovery under the instant section 1782 application before commencing suit, we can discern no error in the district court's determination that CONECEL's foreign civil proceedings against Egas and Narváez were "within reasonable contemplation."

In short, CONECEL's application satisfied the prima facie requirements of 28 U.S.C. § 1782(a).

**B.**

Our inquiry does not end with the statutory requirements. The law is clear that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." Intel, 542 U.S. at 264 (citing United Kingdom, 238 F.3d at 1319). Thus, JASE argues that, even if the statutory requirements have been met, the district court abused its discretion in granting CONECEL's application anyway.

"Whether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court," and "this court may overturn the district court's decision only for abuse of discretion." United Kingdom, 238 F.3d at 1318-19. We have made clear that "[t]his deferential standard is identical to that used in reviewing the district court's ordinary discovery rulings." Id. at 1319; cf. Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996) ("District judges are accorded wide discretion in ruling upon discovery motions, and appellate review is accordingly deferential.").

Interpreting the Supreme Court's decision in Intel, a panel of this Court already has spelled out four factors that should be considered by the district court in exercising its discretion:

17

> Once the prima facie requirements are satisfied, the Supreme Court in Intel noted these factors to be considered in exercising the discretion granted under § 1782(a): (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." The Supreme Court in Intel added that "unduly intrusive or burdensome requests may be rejected or trimmed."

In re Clerici, 481 F.3d at 1334 (citation omitted) (quoting Intel, 542 U.S. at 264-65). JASE's argument that the district court abused its discretion only focuses on the fourth factor. JASE claims that CONECEL's request for discovery from JAS USA is overbroad and improperly seeks confidential and proprietary information related to how both JAS USA and JASE price their services.

The main problem with JASE's claim is that it fails to provide us with any sound basis for overturning the district court's exercise of discretion or for upending the district court's determination that the discovery request was narrowly tailored. This Circuit has held that once the section 1782 factors are met and the district court is therefore authorized to grant the application, "the federal discovery rules, Fed. R. Civ. P. 26-36, contain the relevant practices and procedures for the taking of testimony and the production of documents." Weber v. Finker, 554 F.3d

18

1379, 1384-85 (11th Cir. 2009) (quoting In re Clerici, 481 F.3d at 1336). As we

explained in Weber:

> Section 1782 does not require that every document discovered be actually used in the foreign proceeding. Quite the opposite. Section 1782 expressly provides that the district court should grant discovery under the Federal Rules of Civil Procedure. Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents . . . ." Fed. R. Civ. P. 26(b)(1).

Id. at 1385.

We find unpersuasive JASE's unsubstantiated claim that JAS USA's

compliance with the subpoena would require the disclosure of confidential pricing

information that would harm its competitiveness in the marketplace. On its face,

CONECEL's application does not seek general price information from JASE or

JAS USA or information about how JASE or JAS USA bills any other clients

besides CONECEL. Rather, every request in the application that bears on pricing

information uses language limiting the request to information relating directly to

CONECEL, such as "the rates charged or to be charged to CONECEL," or

"services provided by JAS Ecuador or its affiliates to CONECEL," or "billing or

invoicing to CONECEL," or "services rendered . . . in connection with shipments

to CONECEL." The district court did not abuse its discretion in concluding that

19

the subpoena requests information that "relates directly to the contract at issue" and was "narrowly tailored."

Moreover, JASE does not appear to have taken any steps to meet CONECEL somewhere in the middle or to narrow the discovery request in any particular way; rather, it has taken an all-or-nothing approach seeking to remove JAS USA from the burden of having to produce <u>any</u> documents or deposition testimony, even those that seem unambiguously relevant. We have previously recognized that such an approach is problematic:

> Finally, as to the fourth <u>Intel</u> factor -- whether the § 1782 request is unduly intrusive -- the district court's order granting the § 1782 application specifically indicated that if Clerici wished to pursue his "unduly intrusive" argument, Clerici should file a motion to limit discovery. Clerici never did so and instead chose to appeal the grant of <u>any</u> discovery whatsoever. On appeal, as in the district court, Clerici does not identify the terms of the written request that are overly broad or assert how the scope of the request should be narrowed. Thus, we, like the district court, have no occasion to address the scope of the Panamanian Court's discovery request.

<u>In re Clerici</u>, 481 F.3d at 1335.[5]

The Seventh Circuit has raised similar concerns about all-or-nothing discovery challenges in the course of reversing a district court's complete denial of a section 1782 application as an abuse of discretion:

---

[5] Although the district court in this case did not expressly invite subsequent motions to limit discovery, the basic concern raised by the panel in <u>In re Clerici</u> remains: it is a tall order indeed for a party resisting a section 1782 application to establish on appeal that the district court abused its broad discretion in granting any discovery at all.

> Heraeus's discovery demands are broad . . . . For all we know, they are too broad. But if so, it doesn't follow that Heraeus is not entitled to <u>any</u> discovery. It's not as if its demands were frivolous; it obviously needs a good deal of discovery in order to prepare its case against Biomet. If it's asking for too much, the district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible.

<u>Heraeus Kulzer, GmbH v. Biomet, Inc.</u>, 633 F.3d 591, 597-98 (7th Cir. 2011); <u>see also</u> <u>id.</u> at 598 (noting that the district court's denial of any discovery "was all the more unreasonable because Biomet had refused to meet with Heraeus to negotiate a reduction in the amount of discovery sought" and because of Biomet's "refusal to present any evidence of the burdens that granting Heraeus's discovery request would impose"). These concerns are persuasive. In this case, JASE has failed to identify which particular discovery requests in CONECEL's application are unduly burdensome or to provide any specific evidence to support its blanket claim that JAS USA should be exempted from having to comply with any and all discovery obligations due to overarching concerns about confidentiality that are stated only at the highest order of abstraction.

Finally, JASE suggests that the district court erred because its order denying the motion to vacate did not contain a sufficiently detailed analysis of JASE's arguments about confidential price information. This argument too is without merit. The district court considered the motions and pertinent parts of the record, correctly identified the four <u>Intel</u> factors that guide the exercise of its discretion,

21

correctly observed that JASE objected to the production of purportedly confidential pricing information, and then made the determination that it "disagree[d]" with JASE's confidentiality claim and further found "the Subpoena narrowly tailored and not unduly intrusive or burdensome." We can discern no abuse of discretion in any of these findings.

## C.

JASE's final claim is that the district court erred in denying its motion for reconsideration under Fed. R. Civ. P. 59 and 60.[6] Although not a model of clarity, JASE's motion, beyond merely reiterating JASE's previously raised claims, appeared to seek relief in large part under Fed. R. Civ. P. 60(b)(2), which permits relief from a final judgment, order, or proceeding based on "newly discovered evidence." In this Circuit, we employ a five-part test that a movant must meet in order to be entitled to such relief:

> (1) the evidence must be newly discovered since the trial [or final judgment or order]; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial [or

---

[6] No one disputes that Rules 59 and 60 are appropriate vehicles to seek reconsideration of a district court's order denying a motion to vacate, because the order denying the motion to vacate is final and leaves nothing further pending before the district court, much like any other form of final judgment. Cf. Heraeus Kulzer, 633 F.3d at 593 (holding that a district court order denying a section 1782 application was final and appealable because "[t]he court is finished with the matter -- as the only matter is discovery -- and when no further proceedings are contemplated, the court's last order, even if it is a discovery order, is an appealable final order.").

reconsideration of the final judgment or order] would probably produce a new result.

Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003) (citing Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1316 (11th Cir. 2000)).

The newly discovered evidence that JASE brought to the district court's attention was an April 2011 action filed in Ecuador by Egas, one of the two former CONECEL employees discussed in the section 1782 application. Egas's suit seeks damages from CONECEL for slander based on CONECEL's allegations of her wrongdoing in this section 1782 application. JASE met the first three factors of the Waddell analysis because the evidence was new, discovered with due diligence, and not cumulative. The district court order denying JASE's initial motion to vacate the order granting the section 1782 application was issued in April 2011, the same month that Egas commenced her lawsuit in Ecuador. JASE promptly brought the new evidence to the attention of the district court by filing a timely motion for reconsideration in May 2011.

But JASE's evidence falls short under the fourth and fifth Waddell factors. JASE claims that Egas's suit establishes that any potential civil action by CONECEL against its former employees would be baseless and without merit, thereby confirming that there were no reasonably contemplated proceedings and that CONECEL's section 1782 application was merely a fishing expedition designed to harass JASE and JAS USA. But we cannot simply assume that the

allegations in Egas's lawsuit are true and the allegations in CONECEL's section 1782 application are false. Like the district court, we are in no position to assess the merits of either CONECEL's potential suit against Egas or Egas's retaliatory suit for slander.

In short, JASE's newly discovered evidence proffered in its motion for reconsideration was not material evidence nor evidence that would have probably changed the outcome of the district court's decision. See Waddell, 329 F.3d at 1309. Indeed, the bulk of JASE's motion for reconsideration just reiterated JASE's already-rejected arguments. The district court, therefore, acted entirely within its sound discretion in denying JASE's motion for reconsideration. See Richardson, 598 F.3d at 740 ("A motion for reconsideration cannot be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'" (quoting Michael Linet, Inc. v. Vill. of Wellington, 408 F.3d 757, 763 (11th Cir. 2005))).

The district court's denial of JASE's motion to vacate the order granting CONECEL's 28 U.S.C. § 1782 application and the denial of JASE's motion for reconsideration are **AFFIRMED**.