[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14913

_____

D.C. Docket No. 2:15-mc-00748-KOB

IN RE: Application of Bracha Foundation

HALLIWEL ASSETS, INC.,
PANIKOS SYMEOU,

Intervenors-Appellants,

versus

HORNBEAM CORPORATION,

Intervenor-Appellee,

BRACHA FOUNDATION,

Movant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

September 22, 2016

Before MARTIN and JORDAN, Circuit Judges, and VINSON,[*] District Judge.

PER CURIAM:

Three Ukrainian businessmen and friends bought a steel mill in Ohio.  They incorporated a company in the British Virgin Islands to act as the sole member/owner of the steel mill and each retained one-third of the shares of the BVI parent company.  When a rift between two of the businessmen took place, one of the men was effectively shut out of the operation of the steel mill.  Amidst allegations of self-dealing between the two still-friendly shareholders, their related entities, and the steel mill, the odd-man-out pursued lawsuits in the BVI and in state court in Ohio against the BVI parent company and his former friends.  In addition, pursuant to 28 U.S.C. § 1782, he sought evidence of the self-dealing in New York, Delaware, Florida, and Alabama, for use in as-of-yet-unfiled foreign proceedings.  This is an appeal from one such discovery action.

After review, and with the benefit of oral argument, we affirm in part, and vacate and remand in part.

# I

Section 1782 provides a mechanism for "any interested person" to apply to the district court for an order granting discovery "for use in a proceeding in a

---

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

2

foreign or international tribunal." 28 U.S.C. § 1782. A district court is authorized to grant such an application under § 1782 if the following four statutory requirements are met:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (quoting § 1782) (footnote omitted). If these statutory requirements are met, a district court is authorized—but not required—to grant a § 1782 discovery application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

The Supreme Court has provided four factors for a district court to consider in exercising its discretion under § 1782: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-

3

gathering restrictions or other policies of a foreign country or the United States';
and (4) whether the request is otherwise 'unduly intrusive or burdensome.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65).

"Because Congress has given the district courts such broad discretion in granting judicial assistance to foreign countries, this court may overturn the district court's decision only for abuse of discretion." *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) (quotations and citation omitted). This "extremely limited and highly deferential" standard of review "is identical to that used in reviewing the district court's ordinary discovery rulings . . . ." *Id.* (citations omitted). However, "to the extent the district court's decision is based on an interpretation of law, our review is *de novo*." *Id.* at n.8.

## II

The § 1782 application in the instant case arises out of an ongoing complex commercial dispute. We present here only the facts essential to the resolution of this appeal.

## A

In 2001, corporate entities controlled by Vadim Shulman purchased a steel mill in Warren, Ohio. Mr. Shulman shared this investment opportunity with two of

his friends, Igor Kolomoisky, and Gannady[1] Bogolubov. In November of 2007, ownership of the mill was transferred to Warren Steel Holdings, LLC, a Delaware limited liability company. Warren Steel's beneficial owners were Mr. Shulman, Mr. Kolomoisky, and Mr. Bogolubov. In April of 2008, ownership of Warren Steel was transferred to Halliwel Assets, Inc., a BVI company, and Panikos Symeou became Halliwel's director.

Warren Steel is Halliwel's only asset. Halliwel, in turn, has three registered shareholders: Hornbeam Corporation (a Panamanian entity held in trust for Mr. Shulman); Mr. Symeou (who holds shares in trust for Mr. Kolomoisky); and Marigold Trust Company Limited (which holds shares in trust for Mr. Bogolubov). Although the details of the corporate structures are complex, it is undisputed that Mr. Shulman, Mr. Kolomoisky, and Mr. Bogolubov ultimately each owns or controls one-third of Halliwel.

On December 19, 2014, Hornbeam initiated a transfer of its Halliwel shares to Bracha Foundation, a Liechtenstein foundation which is wholly owned or controlled by Mr. Shulman, and requested Halliwel to amend its books to record the new ownership. Around this time, Hornbeam recorded its resolution of

---

[1] The parties' affidavits and briefs contain various spellings for Mr. Bogolubov's first name. We adopt the spelling from Appellants' brief. *See* Br. for Appellants at 5.

dissolution.  Mr. Symeou has not recorded the transfer.  Accordingly, Hornbeam remains the record owner.

## B

The merits of the underlying commercial dispute between Mr. Shulman, Mr. Kolomoisky, and Mr. Bogolubov are not presently before the Court and we do not attempt to resolve the underlying issues.  However, a brief overview is useful for purposes of context.

According to the § 1782 application, initially filed *ex parte* by Bracha, Mr. Kolomoisky and Mr. Bogolubov "appear to be using entities and individuals under their control to execute an elaborate self-dealing scheme focused on exploiting Warren Steel."  D.E. 1 at 6.  "It appears that [Mr. Kolomoisky and Mr. Bogolubov] are forcing Warren Steel to transact with related parties on terms unfavorable to Warren Steel and to accept ill-advised on-demand loans secured by Warren Steel's assets and revenues from parties related to [Mr.] Kolomoisky, [Mr.] Bogolubov, or [Mr.] Korf, but not [Mr.] Shulman."  *Id.*

In response, Mr. Shulman, through the various entities under his control, has initiated a number of proceedings against Halliwel, its director, and its shareholders.  In 2014, Hornbeam commenced an action in the BVI to enjoin an "extraordinary" shareholder meeting to approve a proposed restructuring of

6

Warren Steel's debt. In 2015, Bracha and Hornbeam pursued an action in Ohio state court to prohibit the sale or transfer of Warren Steel to other entities owned and controlled by Mr. Kolomoisky and Mr. Bogolubov. Discovery has also been sought by Hornbeam pursuant to § 1782 in New York, Delaware, Ohio, and Florida.

## C

As relates to the instant action, Bracha filed an *ex parte* application for discovery pursuant to § 1782 in the Northern District of Alabama. Bracha sought an order directing Regions Bank, a bank present in the Northern District of Alabama, to provide discovery of certain documents for use in contemplated foreign legal proceedings (i) in the BVI against Halliwel and its other shareholders (Mr. Symeou and Marigold) "for violation of the BVI Business Companies Act of 2004, including, without limitation, an accounting, valuation, shareholder oppression, and buyout"; (ii) by Mr. Shulman or one of his entities against Mr. Symeou, in either BVI or Cyprus, for breach of contract and fiduciary duties; and (iii) by Mr. Shulman or one of his entities against Mr. Kolomoisky, and/or Mr. Bogolubov for breach of their joint venture agreement. D.E. 1 at 3–4. The district court granted Bracha's *ex parte* application.

A few months later—after Bracha served its non-party subpoena on Regions Bank and provided notice of the same to Appellants Halliwel and Mr. Symeou (hereinafter, Halliwel)—Halliwel filed a motion to intervene, a motion to vacate, and an emergency motion for protective order.  In its motion to vacate, Halliwel argued, *inter alia*, that § 1782 applications should not be granted *ex parte*; that Bracha was not an "interested person" under § 1782 because it was not the record owner of the Halliwel shares and, under BVI law, only record owners have standing to bring the contemplated action against Halliwel in BVI courts; and that Bracha's discovery was a mere fishing expedition for use in domestic litigation.

Shortly thereafter, Bracha and Hornbeam moved jointly for Hornbeam to intervene or for the district court to amend the original § 1782 application to include Hornbeam, so as to expedite the court's consideration of the merits of the application.

At a hearing where all parties were represented, the district court granted Halliwel and Hornbeam's respective motions to intervene.  As to Halliwel's argument that Bracha failed to satisfy § 1782's "interested person" requirement, the district court noted:

> I think at one point there was an issue as to whether Bracha was truly the entity with an interest and, therefore, satisfied the standing issue. But I think with Hornbeam now added as a party, perhaps we need to amend the initial order to reflect both as interested parties or

8

alternatively interested parties, but I think we satisfy any question about whether there was an interested party with standing upon the intervention of Hornbeam.

D.E. 51 at 8. Halliwel requested that if the district court was going to amend the § 1782 order, Hornbeam should be substituted in as the party entitled to discovery in place of Bracha. The district court demurred from this request, describing it as "a point without a real significant difference" because the issue before the district court was "whether the subpoena to Regions [Bank] that was issued as a result of this should be somehow withdrawn as a result of a vacated order." *Id.* at 13.

After the hearing, the district court issued an order denying Halliwel's motion to vacate, but *sua sponte* quashing the subpoena issued to Regions Bank and amending its original order to reflect the intervention of Hornbeam and to narrow the scope of ordered discovery. The district court rejected Halliwel's argument against granting § 1782 applications *ex parte*, concluding that the use of *ex parte* § 1782 applications is widespread, and even if the original proceeding was *ex parte*, the district court held a hearing and amended its original order in light of the arguments and submissions of all of the parties. With both Bracha and Hornbeam as applicants, the district court concluded that "no reasonable dispute currently exists" on the interested person requirement—it was met. D.E. 46 at 4. The district court specifically declined to determine whether Bracha alone would

9

satisfy the requirement and the amended final order refers to both Bracha and Hornbeam as applicants. *See* D.E. 47 at 2 ("The court GRANTS the application of Bracha and Hornbeam as amended . . . ."). The district court was also satisfied that Bracha and Hornbeam reasonably contemplated foreign litigation because the contemplated BVI claims were distinct from the claims previously brought in the Ohio state court suit, and the applicants also agreed to enter into a protective order limiting the use of evidence obtained as a result of their § 1782 application to foreign proceedings.

After the Ohio state court dismissed Bracha and Hornbeam's suit to prevent the sale of Warren Steel based on the internal affairs doctrine and *forum non conveniens*, Halliwel moved under Rule 60(b) for the district court to reconsider its decision authorizing discovery. The district court denied this motion. It concluded that the "Ohio court rulings regarding the internal affairs doctrine and *forum non conveniens* addressed in a *lawsuit* in Ohio," were different from what the district court had addressed in its prior rulings—"a § 1782 *application for discovery* in reasonable contemplation of future litigation in the BVI." D.E. 53 at 1.

## III

On appeal, Halliwel raises five arguments. First, Halliwel argues that the district court should have abstained from exercising jurisdiction over the § 1782

application due to the operation of the internal affairs doctrine.  Second, Halliwel argues that the application failed to meet two of the § 1782 statutory requirements because one of the applicants, Bracha, was not an "interested person," and also because the discovery was not for use in a proceeding "within reasonable contemplation" in a foreign or international tribunal.  Third, Halliwel contends that two of the discretionary factors identified by the Supreme Court in *Intel* militate against granting discovery because the § 1782 aid was not necessary and circumvented foreign proof-gathering restrictions.  Fourth, Halliwel contends that § 1782, which partially incorporates the Federal Rules of Civil Procedure, does not permit discovery prior to the filing of a foreign proceeding.  Finally, Halliwel argues that the district court abused its discretion in granting the § 1782 application on an *ex parte* basis.

## A

Halliwel's first argument is that the district court erred in granting the § 1782 application because the proper application of the internal affairs doctrine required the district court to abstain from ordering the discovery of documents concerning Warren Steel from Regions Bank.  As it did in its Rule 60(b) motion, Halliwel relies heavily on the Ohio state court action, in which the Court of Common Pleas of Trumbull County, Ohio, General Division, dismissed an action by Bracha asserting the right of a shareholder under Ohio corporate law to view the

11

records of a corporation and seeking, *inter alia*, permanent injunctive relief under Ohio corporate law to stop the sale of Warren Steel or any of its assets to named companies. *See* D.E. 52-1 (Order in *Bracha Foundation v. Warren Steel Holdings, LLC*, No. 2015 CV 1117, 2015 CV 1577 (Trumbull Cty. Ohio Ct. Com. Pl., Oct. 22, 2015)).

The Supreme Court has described the internal affairs doctrine as a "conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. Mite Corp.*, 457 U.S. 624, 645 (1982) (citation omitted). The Court has explained that the doctrine serves a number of important policy goals. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89–90 (1987) (explaining that efficiency of national capital markets rely on the fact that the internal affairs of corporations are generally governed by the law of a single jurisdiction).

However, not all litigation involving corporations triggers the internal affairs doctrine. Rather, the litigation must involve the regulation of the internal affairs of a company. *See, e.g.*, *Edgar*, 457 U.S. at 645 ("Tender offers contemplate

12

transfers of stock by stockholders to a third party and do not themselves implicate the internal affairs of the target company.") (citations omitted).

Halliwel's reliance on the internal affairs doctrine is without merit because the instant § 1782 application does not attempt to regulate the internal affairs of any company. As the district court below correctly observed, "the § 1782 application does not propose to litigate a dispute about Halliwel's internal affairs here in the Northern District of Alabama. Rather, the application is merely a discovery device to obtain evidence here in the jurisdiction where the evidence exists, and then to litigate elsewhere." D.E. 46 at 9. *See also* D.E. 33-31 at 17–18 (Order in *In re Application of Hornbeam Corp.*, No. 1:14-mc-00424-P1 (S.D.N.Y. Sept. 17, 2015) ("This argument also makes no sense because a § 1782 request is merely a discovery device not a pleading or means of actually litigating a dispute about Halliwel's internal affairs.")).

Halliwel's reliance on the Ohio state court judgment is similarly misplaced. That case involved an action under Ohio corporate law asserting substantive shareholder rights under that law and seeking permanent injunctive relief against internal corporate decisions of a foreign corporation. The § 1782 order in the instant case, in contrast, merely requires a third party, Regions Bank, to produce various documents relating to Warren Steel. It does not presume to regulate

13

Warren Steel's (or Halliwel's) internal affairs or the relationships among or between Warren Steel and its current officers, directors, and shareholders. The internal affairs doctrine accordingly provides no bar to the district court's exercise of jurisdiction over the § 1782 application.

**B**

Next, Halliwel argues that the district court erred in granting the § 1782 application because the application failed to meet two of the § 1782 statutory requirements: (1) that the application be made by "any interested person"; and (2) that the requested discovery is "for use in a proceeding in a foreign or international tribunal."

**1**

Section 1782 requires that the discovery request be made "by a foreign or international tribunal" or by "any interested person." The controversy lies with Bracha's status as an "interested person." The § 1782 application in this case—unlike the ones filed in New York, Florida, Ohio, and Delaware—was filed by Bracha. After the district court granted Hornbeam's motion to intervene, the district court expressly declined to decide the question of Bracha's status as an

14

"interested person," and yet, Bracha remained listed as a party entitled to § 1782 discovery.[2]

Halliwel argues that Bracha does not meet the statutory requirement as an "interested person" because it lacks standing to sue Halliwel in the contemplated BVI proceeding. Halliwel cites to its expert's affidavit, stating that "[u]nder §§ 1841, 184 and 78 of the BVI Business Companies Act of 2004, only registered shareholders have standing to bring derivative or direct 'unfair prejudice' claims." Br. for Appellants at 38 (citing affidavit of legal expert). Under Halliwel's articles of association, it maintains, Halliwel is not required to treat a transferee of a share as a shareholder until the transferee's name has been entered in the register of shareholders. *See id.* Mr. Symeou (presumably in his role as Halliwel's director, and not its shareholder) has not recorded the transfer. Halliwel indicates that Mr.

---

[2] Halliwel has repeatedly conceded that Hornbeam is an "interested person" until recently. Now it argues that "Hornbeam's dissolution . . . could conclude in less than three years, disabling it from filing any claims, or it could lose its status as a registered Halliwel shareholder as a result of the BVI execution proceedings, causing it to lose standing to bring BVI § 1841 claims." Reply Br. for Appellants at 23 n.14. Bracha and Hornbeam, on the other hand, argue that Hornbeam's commencement of the voluntary dissolution process does not mean it can no longer bring an action in the BVI for shareholder oppression. *See* Br. for Appellees at 29 n.11 (citing to representations by Mr. Symeou himself that Hornbeam continues to exist despite dissolution proceedings).

We will not presume to determine what could happen between these parties in the next three years. At this point in time, it is undisputed that Hornbeam is an interested party.

In addition, we note that any reliance by Halliwel on the outstanding BVI judgment may be moot in light of the uncontested Rule 28(j) filing from counsel for Bracha and Hornbeam, stating that "on August 24, 2016, Hornbeam's BVI counsel issued a check in the amount of $924,916.62 (representing the $846,526 cost order plus interest) to BVI counsel for Halliwel, Symeou, and Marigold."

15

Symeou is waiting for Hornbeam to pay an outstanding $846,526 judgment to Halliwel that is remnant from Hornbeam's prior unsuccessful suit in the BVI prior to doing so. *See id.* at 9.[3]

Bracha and Hornbeam, for their part, contend that the district court did not err in reserving judgment on Bracha's status because it was sufficient that Hornbeam was an interested person. In the alternative, they argue Bracha is an "interested person" because its rights align with Hornbeam as the anticipated party in the contemplated BVI suit. Moreover, they argue, "[e]ven if the relevant standard were 'participation rights' under BVI law, a beneficial owner [like Bracha] may bring a shareholder action under BVI law." *See id.* at 31 n.13 (citing to Halliwel's expert evidence for support).

We agree with Halliwel that the district court's decision to grant the application to both Hornbeam and Bracha, without deciding whether Bracha was an "interested person," was an error. Section 1782 requires that the application be made by an "interested person." However, the *Intel* Court expressly rejected the narrow construction of "interested person" advanced by Halliwel—that the term is

---

[3] We note that this reason for delaying effectuating the transfer may be nullified. *See* note 2, *supra*.

16

exclusively limited to litigants—holding that "[t]he text of § 1782(a) . . . plainly reaches beyond the universe of persons designated 'litigant.'" 542 U.S. at 256.

In *Intel*, a complainant before the Commission of the European Communities qualified as an "interested person" despite its lack of status as a litigant. The Supreme Court explained that the complainant was an "interested person" within the meaning of § 1782 because it had a "significant role in the process," as the one who triggered the investigation, and also retained "significant procedural rights," such as the right to submit information for the Directorate-General for Competition's consideration and the right to proceed to court if the Commission discontinued the investigation or dismissed the complaint. *Id.* at 255–256. "Given these participation rights," the Supreme Court held, the "complainant possesses a reasonable interest in obtaining judicial assistance, and therefore qualifies as an 'interested person' within any fair construction of that term." *Id.* at 256 (citation, quotation marks, and brackets omitted).

The central question here, then, is whether Bracha—as a beneficial owner, but not the record owner, of shares in Halliwel (the corporation set to be the target of the contemplated litigation)—has sufficient participation rights in the contemplated BVI (or other contemplated foreign) litigation so as to qualify as an "interested person." Because the district court did not decide this issue and there

17

are disputes of fact regarding BVI legal proceedings and arguments that are not adequately developed by the parties on appeal, we find that remand is appropriate.

We therefore vacate the portion of the district court's order granting § 1782 discovery to Bracha, but affirm as to Hornbeam.  On remand, the district court should determine whether Bracha is an "interested person."

## 2

The third of the four § 1782 statutory requirements is that the requested discovery must be "for use in a proceeding in a foreign or international tribunal." § 1782(a).  The foreign proceeding for which a court may authorize discovery need not be "pending or imminent."  *Intel*, 542 U.S. at 259 (internal quotation marks omitted).  Rather, the statute requires only that foreign proceedings "be within reasonable contemplation."  *Id.*  Although "[t]he future proceedings must be more than speculative," it suffices that the district court has "'sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially.'"  *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA) Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014) (quoting *In re Letter of Request from the Crown Prosecution Serv. of the U.K.*, 870 F.2d 686, 691 (D.C. Cir. 1989)).

Halliwel argues that the district court erred in granting discovery because the requested discovery was not "within reasonable contemplation."  Its main

18

argument is that the existence of an outstanding judgment of $846,526 in the BVI against Hornbeam—remnant from Hornbeam's prior unsuccessful suit in the BVI, and the satisfaction of which is a requirement for Hornbeam to proceed with any new BVI proceedings—prevents any future foreign proceedings from being "within reasonable contemplation." *See* Br. for Appellant at 32–33.

We hold that the district court did not abuse its discretion in determining that future proceedings in the BVI were "within reasonable contemplation" despite the existence of this outstanding judgment.  Although Hornbeam cannot pursue new litigation until it satisfies the judgment, there is no reason to believe it will not or cannot pay.[4]  Bracha and Hornbeam have represented their intention to return to litigation in the BVI and have articulated a theory upon which they intend to litigate.  Indeed, we suspect that the decision to satisfy the judgment and pursue new litigation in the BVI may depend on its success in the instant § 1782 discovery proceedings.  For these reasons, it is clear that the district court did not err in finding that the requested discovery is for use in a proceeding in a foreign or international tribunal.

---

[4] Again, we note this argument may be moot.  *See* note 2, *supra*.

## C

We turn next to Halliwel's international comity argument.  Halliwel contends that the district court erred in concluding that the first and third *Intel* discretionary factors favored discovery, and that it abused its discretion in granting the § 1782 application.

The district court found that the first *Intel* factor—"whether 'the person from whom discovery is sought is a participant in the foreign proceeding,'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65)—favored granting Hornbeam's application because the entity from whom discovery is sought, Regions Bank, was not a participant in the foreign proceedings.  The district court recognized that Bracha and Hornbeam might also be able to seek some records directly from Halliwel in the contemplated BVI proceeding, but reasoned that a BVI court would still have no jurisdiction to compel the production of evidence from Regions Bank, a non-party financial institution located in the Northern District of Alabama.

As to the third *Intel* factor—"'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States,'" *id.* (quoting *Intel*, 542 U.S. at 264–65)—the district court concluded that it also favored discovery.  The district court credited Bracha and Hornbeam's explanation that, given their "lack of success in past BVI

20

proceedings," they "needed to be armed with evidence to support their claims of bad financial acts on the part of the proposed defendants, and that obtaining financial records from a bank not located within the jurisdiction of BVI tribunals to show inconsistencies and anomalies in those records could provide that support." D.E. 46 at 9. This was not, the district court concluded, an attempt to forum shop and circumvent BVI evidence gathering procedures. *See id.*

On appeal, Halliwel contends that "the question is not, as the [district court] found, whether the documents are located in a United States judicial district, but whether they can be obtained from a party to foreign litigation." Br. for Appellant at 30. Halliwel argues that the district court abused its discretion because Bracha and Hornbeam did not first attempt to seek the requested documents from Halliwel in the BVI, and instead sought to obtain "Warren Steel records through the back door." *Id.* We are not persuaded.

As the Supreme Court explained in *Intel*, § 1782 discovery is more likely to be justified when the person from whom the discovery is sought is not a participant in the prospective foreign proceeding because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a)

aid." 542 U.S. at 264.  Here, it is undisputed that Regions Bank is not a participant in the prospective foreign proceedings.

In addition, the documents sought in the subpoena to Regions Bank are broader in scope than, and not clearly duplicitous of, documents that would be in Halliwel's (or even Warren Steel's) possession in the BVI.  For example, the district court authorized the production of "[a]ll communications and relationships with Related Party Lenders, Related Entities, and Related Individuals . . . *concerning* Warren Steel, business transactions with Warren Steel, or loans to Warren Steel."  D.E. 47 at 3 (emphasis added).[5]  Thus, the district court did not abuse its discretion in granting an application seeking domestic documents in the possession of a domestic party that would *not* be available in the foreign jurisdiction.  *Cf. Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 81–84 (2d Cir. 2004) (finding the first *Intel* factor weighed against discovery where German investors could seek *the same documents* from the German company in the German litigation as the investors sought to discover from the law firms representing the German company in a similar litigation commenced in the United

---

[5] The definitions of "Related Party Lenders," "Related Entities," and "Related Individuals," include many parties unfamiliar to this Court, including Divot Enterprises Limited, CC Metal and Alloys LLC, Felman Trading, Inc., and Optima Acquisitions, LLC.  *See* D.E. 47 at 3 n.1.

22

States).  Finally, we note that we have previously upheld discovery under § 1782 in the context of intra-shareholder disputes.  *See Weber v. Finker*, 554 F.3d 1379 (11th Cir. 2009).

Other courts have held that even when the requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery.  *See In re Malev Hungarian Airlines*, 964 F.2d 97, 100–101 (2nd Cir. 1992) (rejecting a "quasi-exhaustion requirement" because "requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782 . . . .  It would undermine the policy of improving procedures for assistance to foreign and international tribunals by imposing an additional burden on persons seeking assistance from our federal courts for matters relating to international litigation.  Additionally, it would undermine the policy of prompting foreign courts to act similarly based on our own generous example."); *In re Bayer AG*, 146 F.3d 188, 195–96 (3d Cir. 1998).  We too decline to adopt such a requirement.

In sum, we discern no abuse in the district court's decision to permit discovery based on the *Intel* discretionary factors.

23

**D**

We turn next to Halliwel's argument that the district court erred by authorizing pre-filing discovery. Specifically, Halliwel argues that the district court erred because § 1782 incorporates the Federal Rules of Civil Procedure and the Federal Rules do not generally permit pre-filing discovery.

This argument appears to misunderstand the relationship between § 1782 and the Federal Rules of Civil Procedure. As we have explained,

> The district court's authority to order [a person residing or found in a district] to give testimony "for use in a proceeding in a foreign . . . tribunal" stems from § 1782. 28 U.S.C. § 1782(a). Section 1782(a) then provides that, in its order granting § 1782 assistance, the district court "may prescribe the *practice and procedure* . . . for taking the testimony or statement or producing the document or other thing." *Id.* (emphasis added). This "practice and procedure" may be "in whole or part the practice and procedure of the foreign country or the international tribunal." *Id.* To the extent that the district court does not otherwise prescribe the practice and procedure, § 1782(a) provides that "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id.*

*In re Clerici*, 481 F.3d at 1335–36.

In other words, while the Federal Rules of Civil Procedure provide the default "practice and procedure" in which § 1782 discovery is be taken, the statutory authorization for district courts to compel discovery for use in foreign or international proceedings comes not from the Federal Rules of Civil Procedure but rather from § 1782 itself. *See id.* at 1336 ("Section 1782(a) refers to the Federal

24

Rules, not for whether the district court can order [a person] to give any testimony, but only for the procedures or manner in which that testimony is to be taken."). Accordingly, we look to § 1782, and not to the Federal Rules of Civil Procedure, to determine whether § 1782 discovery may only be authorized after the filing of a foreign proceeding.  Section 1782 contains no such requirement.

## E

Finally, we reject Halliwel's argument that the district court erred in granting the original § 1782 order *ex parte*.  The district court quashed the subpoena issued to Regions Bank pursuant to the original *ex parte* § 1782 order, and amended the original § 1782 order following full participation of all of the parties.  Therefore, this argument is moot.  We furthermore decline Halliwel's invitation to entertain this argument on the basis that "in the future [Bracha and Hornbeam] may file new *ex parte* applications."  Br. for Appellants at 40 n.11.

## IV

For the reasons discussed above, the district court's order granting Bracha and Hornbeam's § 1782 application is **AFFIRMED** with regards to Hornbeam but **VACATED** to the extent that it grants discovery to Bracha.  We **REMAND** for the district court to determine whether Bracha is an interested party.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**